UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

EMELYN BONILLA
        Plaintiff,

v.                                            CASE NO.: 6:23-cv-0581

EMERGE HEALTHCARE GROUP, LLC, ET AL.,
Defendant.

_____

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**COMES NOW**, Plaintiff, EMELYN BONILLA("Plaintiff") by and through the undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, and the Local Rules for the United State District Court, Middle District of Florida, and hereby files Plaintiff's Motion for Summary Judgment and Incorporated Memorandum of Law, and in support states as follows:

### I.       INTRODUCTION

Plaintiff was an hourly employee who worked for the Defendants' failing healthcare business. As a benefit of her employment, Plaintiff was eligible to participate in an employer sponsored benefits plan which provided health insurance.

Plaintiff elected to participate in the plan, opting for United Healthcare health insurance which was to start on April 1, 2022. Unfortunately, on April 9, 2022, Plaintiff had a seizure and learned that she had a brain tumor which was removed on April 25, 2022.  As a result of her brain surgery, Plaintiff incurred over $120,000.00 in

1

medical claims which were submitted to United but ultimately denied for lack of coverage. During litigation, it was uncovered that Defendants never paid United Healthcare and the plan was canceled back to April 1, 2022, as if it never existed.

Defendants never notified Plaintiff that her coverage under the plan was canceled. This action seeks to recover damages covering the costs of the denied insurance claims and for damages regarding Defendants failure to provide COBRA notice.

## II.    PROCEDURAL HISTORY

1. On March 30, 2023, Plaintiff filed her two (2) count complaint[1] against Defendants alleging:

   **Count I:** Breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA")

   **Count II:** Violation of 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4

## III.    STATEMENT OF FACTS

2. Historically, Defendants had been one of the largest physical therapy providers in Brevard County, Florida and provided orthopedic medicine specializing in orthopedics, spine surgery, neurology interventional pain management and related diagnostics.[2]

3. First Choice Healthcare Solutions, Inc. (**First Choice**) is a Delaware corporation created in 2011 and is the parent company of the affiliate Defendants. First Choice was registered with the U.S. Securities and Exchange Commission [3]

---

[1] Doc. 1.
[2] First Choice Healthcare Solutions, Inc., 6:20-bk-03355, Doc. 2, p. 2. (Bankr. M.D. Fla.)
[3] *Id*.

4.  FCID Medical, Inc. (**FCID**) is a Florida corporation created in 2010. FCID employe non-licensed/non-biller medical staff such as front desk staff and medical billing specialists and owns fixed assets. FCID is wholly owned by First Choice. [4]

5.  Providing medical care to patients is conducted via First Choice Medical Group of Brevard, LLC. (**Medical Group**) Medical Group is a Delaware limited liability company that was created in 2011. Medical Group relies on payments from insurance companies, Medicare and Veteran's Administration ("VA"). Medical Group is wholly owned by FCID. [5]

6.  In 2020, First Choice, Medical Group, and FCID filed for Chapter 11 bankruptcy and had their cases jointly administered.[6]

7.  Following the bankruptcy, Medical Group started using EMERGE HEALTHCARE GROUP, LLC ("**Emerge**") as a fictitious name. [7]

**Plaintiff's Employment**

8.  Plaintiff worked for Medical Group as an authorization coordinator at a rate of $21.00 per hour, plus benefits which were part of an employee welfare benefit plan.[8]

9.  On March 12, 2022, Rubilinda Rosado, Defendant's HR Administrator, sent an internal email to all Emerge employees informing them of the upcoming open

---

[4] *Id.* at p. 3
[5] *Id.* at p. 2-3
[6] First Choice Healthcare Solutions, Inc., 6:20-bk-03355 (Bankr. M.D. Fla.)
[7] Friedman Dep. 19:20-20:8.
[8] Exhibit A

enrolment to select health, dental, and vision benefits. [9] The email included the 2022 Benefits Enrollment Guide. [10]

10. Soon thereafter, Plaintiff enrolled in Defendants sponsored health insurance plan through United Healthcare. ("United Plan" or the "Plan"). The Plan was to commence on April 1, 2022.

11. On April 4, 2022, Julie Hardest, Defendants' controller, sent an internal email to Ms. Rosado, with the subject line, "United Invoice Detail", and attached an excel spreadsheet entitled, "UHC 04-22 Premiums.xlsx". The spreadsheet shows the monthly cost of $25,140.23 for the United Plan and includes Plaintiff as a participant.[11]

12. On April 5, 2022, Defendants received an email with a spreadsheet titled, "FCMGB Member ID Numbers.xls" which contained the employees that elected medical benefits and their medical ID numbers. Ms. Bonilla was included in the spreadsheet, with an ID Number of 12549685500. [12]

13. The spreadsheet indicates that Plaintiff elected the "Low Plan". According to the 2022 Benefits Enrollment Guide, the "Low Plan" had a yearly deductible of $3,500

_____

[9] Exhibit B
[10] Exhibit C
[11] Exhibit D-Highlighting in original removed. Plaintiff's name highlighted for clarity.
[12] Exhibit E

and a Max Out-of-Pocket of $8,150.00. Plaintiff's monthly payroll deduction was $33.90. [13]

14. On or about April 9, 2022, Plaintiff had a seizure and learned that she had a brain tumor which was removed on April 25, 2022. As a result of her brain surgery, Plaintiff incurred over $120,000.00 in medical claims which were submitted to United but denied for lack of coverage.[14], [15]

15. The United Plan was ultimately canceled back to April 1, 2022, due to Defendants' failure to remit payment. [16]

16. In fact, Defendants never paid any money to United Healthcare and the plan was canceled as though it never existed. [17]

17. On June 10, 2022, Defendants were informed that UHC never received the initial premium. In fact, they were informed of this as early as April 15, 2022. [18]

18. In July 2022, Defendants' internal emails discuss how they did not pay any of the premiums to United and were now unable to pay for the original $25,000 to cover April due to payments to Defendant Friedman and CFO Phil Keller. [19]

---

[13] Exhibit C, p2.
[14] Exhibit F
[15] Some of the claims show that they were initially covered, but those have since been charged back to Defendants.
[16] Lee Dep. 59:15-24.
[17] Hardesty Dep.56:22-57:7; 62:3-13.
[18] Exhibit G
[19] Exhibit H; Hardesty Dep. 66:7-11

19. During this timeframe, insurance premiums for the United Plan were deducted from Defendants' employees' paychecks but were kept in Defendants' general operating account, as were deductions for payroll taxes. [20] None of those deductions went to the intended recipient, including the payroll taxes owed to the IRS. [21]

20. On September 21, 2022, Defendants were informed that the UHC plan was terminated back to April 1, 2022. [22]

21. On January 18, 2023, Plaintiff was informed by Advent Health that her claim was denied because coverage was not in effect for her April 25, 2022, surgery and that she owed $103,171.70. [23]

22. Had Defendants made a single monthly payment to United, Plaintiff's claims from her April 25, 2022, surgery would have been covered. However, payments to executives, including Mr. Friedman, prevented the company from doing so. [24]

**Administrative Remedies**

23. On February 2, 2023, Plaintiff's counsel sent a request to Defendants' counsel for the plan documents for the United Plan and followed up again on February 8, 2023. [25]

_____

[20] Hardesty Dep.46:8-20
[21] Hardesty Dep.46:21-47-3.
[22] Exhibit I
[23] Exhibit F, p. 27.
[24] Exhibit H
[25] Exhibit J, P. 1-2

24. On February 10, 2023, Defendants' counsel sent a letter to Plaintiff's counsel regarding Plaintiff but did not provide the United Plan documents.

25. On February 14, 2023, Defendants' counsel was informed that the records they produced are incomplete and sought to have a brief conference on the issue. [26]

26. On March 9, 2023, Plaintiff's counsel emailed Defendant's counsel about the outstanding documents pertaining to Plaintiff and requested a waiver of conditions precedent, which was agreed to on March 12, 2023. [27], [28]

**Lance Friedman**

27. Mr. Friedman is the CEO or managing member of each of the corporate Defendants and the ultimate decision maker. [29] He had the authority to sign checks, including payroll checks[30], on behalf of the enterprise and bind the companies in financial decisions. [31]

28. When negotiating reinstatement of employee benefits i.e. health insurance, Mr. Friedman made the decision not to move forward. [32]

**COBRA Notice**

---

[26] Exhibit K
[27] Exhibit L
[28] Plaintiff's counsel also reached out to United for the plan documents but was unsuccessful.
[29] Lee Dep.  30:8-18; 38:11-18
[30] Exhibit M, p. 51-52.
[31] Lee Dep.  35:5-20.
[32] Lee Dep.  60:4-61:3

29. At no point was Plaintiff provided with COBRA notice that her benefits had

changed or were canceled. [33]

## AUTHORITY AND ARGUMENT

## Count I: BREACH OF FIDUCIARY DUTY- ERISA

Section 1132(a)(3) permits a cause of action to recover money equal to the

insurance benefits lost due to the defendants' breach of fiduciary duty. Gimeno v.

NCHMD, Inc., 38 F.4th 910, 914 (11th Cir. 2022). To establish liability for a breach of

fiduciary duty under any of the provisions of ERISA § 502(a), a plaintiff must first

show that the defendant is in fact a fiduciary with respect to the plan. Baker v. Big

Star Div. of the Grand Union Co., 893 F.2d 288, 289 (11th Cir.1989) ("non-fiduciaries

cannot be held liable under ERISA"). ERISA provides, in part:

> a person is a fiduciary with respect to the plan to the extent (i) he
> exercises any discretionary authority or discretionary control respecting
> management of such plan *or exercises any authority or control respecting
> management or disposition of its assets*, …or (iii) he has any discretionary
> authority or discretionary responsibility in the administration of such
> plan.
>
> ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) (*Emphasis added*).

Once employee contributions are withheld, the withheld monies are deemed

to be held in trust for the Plan, even if the funds remain in the Defendants general

checking account. In re College Bound, Inc., 172 B.R. 399 (Bankr. S.D. Fla. 1994); *See*

---

[33] Exhibit N-#6.

*also* Professional Helicopter Pilots Ass'n v. Denison, 804 F.Supp. 1447 (M.D.Ala.1992) (withheld employee wages became plan assets as soon as wages were deducted); US v. Grizzle, 933 F.2d 943,947-48 (11th Cir. 1991)(Assets of an employee benefit plan include employee contributions which are withheld from employees' paychecks by employers).

An employer may be held liable where it retains employee contributions for operational expenses instead of forwarding the funds per the plan. *See*, Pension Benefit Guaranty Corporation v. Solmsen, 671 F.Supp. 938 (E.D.N.Y.1987) (an employer who had assumed the duty to forward employee contributions to the benefit plan but allocated the monies to corporate expenses rather than to the employee benefit plan, was held liable for the misuse of plan assets.) If a person breaches their fiduciary duties to an ERISA fund, he or she "shall be personally liable to make good to such [fund] any losses ... resulting from each such breach." 29 U.S.C. § 1109(a).

Here, Defendants enrolled Plaintiff in the Untied Plan, along with numerous other employees. As has been shown in the related cases, Defendants made deductions from employee paychecks, but never forwarded any of those funds to United. Instead, those paycheck deductions were put in the Defendants' general operating accounts and used to pay other expenses.  As a result of Defendants' failure to pay United, the Plan never functionally existed. Even more troubling, internal emails indicate that the company was unable to pay the initial $25,000.00 to United

for the first month because they used plan assets to make payments to their corporate officers, including Mr. Friedman. Although there were numerous opportunities to reinstate the Plan, the decision not to move forward was made by the CEO, Mr. Friedman.

As such, there can be no dispute that Defendants breached their fiduciary duties owned to Plaintiff, and the other Emerge employees, by misappropriating Plan Assets and not forwarding them to United. As or Mr. Friedman, he exercised discretion and control over the Plan, personally benefitted from his unlawful receipt of Plan assets, and subsequently made the decision to not have the Plan reinstated. This is a clear breach of his fiduciary duties and directly harmed Plaintiff.

As a result of these breaches, Plaintiff was not insured and her medical claims totaling $ 121,828.21, which were otherwise covered, were denied. Therefore, Plaintiff is entitled to an equitable surcharge for losses caused by Defendant's breach. [34]

## Administrative Remedy

The Eleventh Circuit has recognized exceptions to the exhaustion requirement "only when resort to administrative remedies would be futile or the remedy inadequate, or where a claimant is denied `meaningful access' to the administrative review scheme in place." *Id.* at 1316 (cleaned up). To establish futility, though, a plaintiff must make a "clear and positive" showing. *See Bickley v. Caremark Rx, Inc.,* 461

---

[34] *Gimeno v. NCHMD, INC.*, 38 F.4th 910 (11th Cir. 2022).

F.3d 1325, 1330 (11th Cir. 2006). "[I]f nothing indicates that a plan administrator would have afforded a claimant less than an adequate legal remedy, a claimant who does not first attempt to use administrative remedies waives the futility argument." *Fla. Health Scis. Ctr., Inc. v. Total Plastics, Inc.,* 496 F. App'x 6, 12 (11th Cir. 2012) (citing *Bickley,* 461 F.3d at 1330); *see also Lanfear v. Home Depot, Inc.,* 536 F.3d 1217, 1225 (11th Cir. 2008) ("In *Bickley,* we rejected an argument of futility as speculative because the participant had not attempted to pursue administrative remedies."). Ultimately, "[t]he decision of a district court to apply or not apply the exhaustion of administrative remedies requirement for ERISA claims is a highly discretionary decision which [the Eleventh Circuit] review[s] only for a clear abuse of discretion." *Perrino,* 209 F.3d at 1315.

### *Plaintiff was denied Plan Documents*

Here, there were no administrative remedies for Plaintiff to pursue. Prior to filing, Plaintiff requested access to the Plan documents which would contain said procedures. Those requests were unfulfilled, and no Plan documents were ever produced. Because Plaintiff was denied access by Defendants to the Plan documents and its review scheme, Plaintiff was exempt from the exhaustion requirement.

Moreover, during litigation it was uncovered that the Plan was cancelled back to the start date, "as though it never existed." As such, there was no review scheme for Plaintiff to exhaust.

### *Defendants waived conditions precedent defense.*

Having attempted to obtain the necessary plan documents prior to filing but without any success, Plaintiff requested, and Defendant agreed to waive conditions precedent.

### *Administrative remedies would be futile.*

Even if there were administrative remedies to pursue, the review would have been futile. Because Defendants never paid United any money, it was canceled as if it never existed. i.e. back to April 1, 2022.  This means that the United Plan was <u>never</u> in effect. To this end, even if there was a process for Plaintiff to appeal the denial of her claims stemming from her April 25, 2022, surgery, the outcome would have been the same because neither she nor any other Emerge employee, was covered in April 2022, or any time thereafter, because Defendants never paid anything to United.

## <u>Count II: COBRA Notice</u>

COBRA allows employees and their dependents to extend health coverage under an employer's group health plan when coverage would otherwise be lost due to a "qualifying event." One type of qualifying event is termination of employment for reasons other than gross misconduct, or reduction of hours. *See* 29 U.S.C. § 1163(2). The employer must notify its healthcare administrator of the employee's termination within 30 days, *id.* § 1166(a)(2), and the administrator then must notify the employee of her continuation right within 14 days, *id.* § 1166(a)(4)(A), (c). If a terminated employee does not receive notice of her COBRA rights, she may file a civil action to enforce her rights. § 1132(a).

Here, Plaintiff went on medical leave on April 9, 2022, thus reducing her hours, and her employment was ultimately terminated in September.  Plaintiff's medical leave in April was a qualifying event; however, Defendants failed to provide her with COBRA notice at any point in time.  Had notice been timely provided, especially under the circumstances considering the medical procedures Plaintiff was undergoing in April 2022, she would have elected continued coverage, and her brain surgery and related billing would have been covered.

As a result of Defendants failure to provide COBRA notice, Plaintiff was not insured and her medical claims totaling $ 121,828.21, which were otherwise covered, were denied.  Therefore, Plaintiff is entitled to an equitable surcharge for losses caused by Defendants failures. [35]

Additionally, Plaintiff requests statutory damages of $110 per day from April 9, which as of the time of filing, amounts to approximately $63,000.00.

**<u>Attorney's Fees and Costs</u>**

An additional element of Plaintiff's claim is the recovery of attorney's fees and costs. Specifically, 29 U.S.C. § 216(b) (FLSA), Fla. Stat. § 448.110(6)(c)(1) (FMWA), Fla. Stat. §448.08 (Unpaid Wages), 29 U.S.C. § 1132(g)(1)(ERISA)authorizes an award of attorney's fees and costs to the prevailing plaintiff(s).  To the extent that the Court

---

[35] *Gimeno v. NCHMD, INC.*, 38 F.4th 910 (11th Cir. 2022).

grant's Plaintiff's motion for summary judgment, Plaintiff request that the court grant leave to file a separate motion in accordance with Local Rule 7.01

**WHEREFORE**, Plaintiff respectfully requests the entry of a Summary Judgment in her favor and against the Defendants, for all wages and benefits due to her, liquidated damages, any other relief that this court deems fit.

Dated this 1st day of November 2023.

ARCADIER, BIGGIE & WOOD, PLLC
/s/ Maurice Arcadier, Esquire
Maurice Arcadier, Esquire

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original of the foregoing was filed with the Clerk of Court by using the CM/ECF system, on this 1st day of November 2023. Counsel of Record for all parties will receive notice of the electronic filing.

ARCADIER, BIGGIE and WOOD, PLLC
/s/Maurice Arcadier, Esquire
Maurice Arcadier, Esquire
Florida Bar No. 0131180
2815 W. New Haven, Suite 304
Melbourne, Florida 32904
Primary Email: Office@ABWlegal.com
Secondary Email: arcadier@ABWlegal.com
Phone: (321) 953-5998
Fax: (321) 953-6075