UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

EMELYN BONILLA,                          Case No.:  6:23-cv-0581

      Plaintiff,

v.

EMERGE HEALTHCARE GROUP,
LLC, a Florida
Limited Liability Company,

FCID MEDICAL, INC.
a Florida Profit Company,

FIRST CHOICE MEDICAL GROUP
OF BREVARD, LLC,
a Delaware Limited Liability
Company,

FIRST CHOICE HEALTHCARE
SOLUTIONS, INC.
a Delaware Corporation, and

LANCE FRIEDMAN, individually,

      Defendants.

_____/

## **<u>DEFENDANTS' TRIAL BRIEF</u>**

Defendants, EMERGE HEALTHCARE GROUP, LLC ("EMERGE"), FCID

MEDICAL, INC. ("FCID"), FIRST CHOICE MEDICAL GROUP OF BREVARD, LLC

("FCMG"), FIRST CHOICE HEALTHCARE SOLUTIONS, INC. ("FCHS"), and

LANCE FRIEDMAN, individually ("FRIEDMAN"), by and through their undersigned

attorneys, hereby respond their Trial Brief, and state as follows:

## PROCEDURAL HISTORY

Plaintiff sued Defendants for breach of fiduciary duty (Count I) and violation of 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 (Count II). (Doc. 1). With respect to Count I, Plaintiff alleges that Defendants – all of whom Plaintiff alleges are plan fiduciaries – breached their fiduciary duties by: (1) causing Plaintiff's insurance policies to lapse or be canceled; (2) withholding insurance premiums from Plaintiff's paychecks but not remitting the payments to the insurance companies; (3) not informing Plaintiff that her policies were canceled; and (4) continuing to make deductions from Plaintiff's paychecks. (Doc. 1, ¶¶ 72, 74). With respect to Count II, Plaintiff alleges that "Defendant failed to send Plaintiff a COBRA notice in violation of 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 for the reasons set forth above (among other reasons)." (Doc. 1, ¶ 84).

On November 1, 2023, Plaintiff filed her Motion for Summary Judgment. (Doc. 33). On April 9, 2024, the Court denied Plaintiff's Motion for Summary Judgment. (Doc. No. 47).

## STATEMENT OF FACTS

### The Defendant Companies

FIRST CHOICE HEALTHCARE SOLUTIONS, INC. ("FCHS") is a holding company for FIRST CHOICE MEDICAL GROUP OF BREVARD, LLC ("FCMG") and FCID MEDICAL, INC. ("FCID"). FCHS wholly owns FCID; FCID wholly owns FCMG. *See* Exhibit 1, Declaration of Lance Friedman in Opposition to Plaintiff's

Motion for Summary Judgment dated November 1, 2023, ¶ 12.

FCHS' former CEO, founder, and principal shareholder, Chris Romandetti, was charged with securities fraud. *See* Exhibit 2, Deposition of Lance Friedman taken on June 13, 2023, at 12:16-20. Prior to "the Chris Romandetti incident," the company had $34 to $35 million of revenue which then came down to "a million-and-a-half dollars with a massive infrastructure." *See* Exhibit 2, 12:11-15.

As a result, FCHS, FCMG, and FCID each filed for Chapter 11 bankruptcy in 2020. The bankruptcy cases, along with the bankruptcy case for non-party Marina Towers, LLC, were jointly administered for procedural purposes only under Case No. 6:20-bk-3355-LVV. *See* Exhibit 1, ¶ 15. The bankruptcy plan was confirmed in February 2021, and FCHS' bankruptcy case and the jointly administered bankruptcy cases for FCMG, FCID, and non-party Marina Towers, LLC were closed on April 27, 2022. *See* Exhibit 1, ¶ 16.

At times, employees were not paid "because there was no revenue to support operations at the company and investor capital was not adequate and timely to continue regular payrolls." *See* Exhibit 2, 56:1-4. Gillean Lee, the executive assistant to the CEO and CFO and director of Human Resources, testified that the reason employees were not paid their wages is because "[t]he company did not have enough funds to be able to produce the compensation." *See* Exhibit 3, Deposition of Gillean Lee taken on July 17, 2023, at 9:2-3, 17:13-16. Julie Hardesty, FCHS' controller, testified that employees weren't paid "because the company simply didn't have the

money to pay them." *See* Exhibit 4, Deposition of Julie Hardesty taken on July 17, 2023, at 10:12-13, 22.

Issues also arose with the health insurance plans.  These issues form the basis for Plaintiff's claim for violation of ERISA.  FCMG explained the issues with the Florida Blue insurance plan in its response to Plaintiff's interrogatories:

> The Florida Blue group plan was fully funded through November 30, 2021, when Respondent began to lapse on payment, due to financial obligations imposed by Federal Bankruptcy court.  Respondent attempted to negotiate a payment plan with Florida Blue over the next four months.  However, Florida Blue ultimately cancelled the group plan in April, retroactively terminating the policy as of November 30, 2021.  Respondent then attempted to obtain a group plan from United Healthcare.

*See* Exhibit 5, FCMG's Answers to Interrogatories at 2.  During the bankruptcy, the payments were stayed but the arrearages owed to Florida Blue then became "significant." *See* Exhibit 2, 39:3-6.  The Florida Blue plan was canceled because it wasn't paid.  *See* Exhibit 4, 45:7-9.

With respect to the United Healthcare insurance plan, FCMG explained:

> Respondent obtained a group plan with United Healthcare in April 2022 in conjunction with using a new payroll company (TriNet HR Solutions).  However, the relationship between TriNet and Respondent failed, resulting in the premium never being paid and the policy lapsing as if it had never existed.  Again, Respondent attempted to work out payment plans with United Healthcare.  However, the company was never able to recover after the court-imposed bankruptcy payments, and United Healthcare terminated the policy.

*See* Exhibit 5 at 3.  UnitedHealthcare terminated its agreement "because of our financial problems." *See* Exhibit 2, 39:8-12.  Essentially, there was no money to pay

4

for the health insurance.  *See* Exhibit 2, 38:12-24.

Wage deductions went into a general business account for regular operating expenses. *See* Exhibit 2, 69:14-18. However, the CFO, Phil Keller, managed the bank accounts;  FRIEDMAN doesn't "manage any of the finances of the company hands-on where I move money or do any of those things.  I never have from the date of my appointment as CEO.  I don't do that, never have done it." *See* Exhibit 2, 69:23-25, 70:1-2.  The deduction was made on the paychecks and the money was kept in the general operating accounts. *See* Exhibit 4, 48:12-16.

### Defendant FRIEDMAN

FRIEDMAN is the Manager of FCMG and EMERGE, and the CEO of FCID and FCHS.  *See* Exhibit 1, ¶¶ 6-9.  FRIEDMAN is not compensated by either FCHS, FCMG, FCID, or EMERGE.  *See* Exhibit 1, ¶ 11.  FRIEDMAN was brought on to help the companies get through bankruptcy reorganization.  *See* Exhibit 1, ¶ 17.  His background includes prior work for investment firms and running investment banking departments for various broker-dealers and firms.  *See* Exhibit 1, ¶ 4. Currently, he helps troubled companies through reorganization, helps them raise capital, and tries to resurrect their business plan. *See* Exhibit 1, ¶ 5.

Accordingly, as CEO of FCHS, FRIEDMAN's specific duties are to raise capital, reorganize the company, and resurrect operations. *See* Exhibit 1, ¶ 23.  His goals are to list FCHS on a fully reporting nationally-listed exchange, acquire businesses to help shareholder value, and try to move FCHS forward. *See* Exhibit 1, ¶ 23.  His job

5

is to work with investors to obtain funding. *See* Exhibit 1, ¶ 24.

FRIEDMAN does not control the operations of FCHS, FCMG, FCID, or EMERGE, and he does not make decisions on day-to-day matters. *See* Exhibit 1, ¶¶ 19, 20. FRIEDMAN does not control the financials for FCHS, FCMG, FCHS, or EMERGE and he does not manage any of the finances as far as moving or transferring money. *See* Exhibit 1, ¶ 21. He does not maintain the payables and does not make decisions on what gets paid. *See* Exhibit 1, ¶ 22. With respect to FCID specifically, FRIEDMAN does not handle any of the financial aspects of the corporation and has no knowledge about how revenue is booked, where it is sent, or how it is collected. *See* Exhibit 1, ¶ 25. He does not make determinations as to who is being paid out of what. *See* Exhibit 1, ¶ 25. FRIEDMAN testified: "I don't control the operations to the extent that I make decisions on day-to-day matters. I'm just providing a vision, and help develop a business plan so that the company can improve operations and move forward." *See* Exhibit 2, 48:2-6.

FRIEDMAN did not deal with the insurance companies Florida Blue or UnitedHealthcare. *See* Exhibit 1, ¶ 33. FRIEDMAN testified that he let his "team members" "make those determinations. And you know, in this case, I never dealt with Florida Blue, I never dealt with UnitedHealthcare. And I don't know any of the facts and circumstances regarding that, other than high level descriptions that I've been able to provide to you today." *See* Exhibit 2, 39:25, 40:2-7.

## <u>CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY UNDER ERISA</u>

29 U.S.C. § 1132  allows civil actions to be brought by various persons, including participants, beneficiaries, fiduciaries, or the Secretary.  Beneficiaries may bring civil actions under either subsection (a)(1)(B) or (a)(3).  29 U.S.C. § 1132(a)(1)(B) states that "[a] civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B).  Additionally, "[a] civil action may be brought ... by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]"  29 U.S.C. § 1132(a)(3).

29 U.S.C. § 1109 addresses liability for breach of fiduciary duty.  Subsection (a) states:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.  A fiduciary may also be removed for a violation of section 1111 of this title.

29 U.S.C. § 1109(a).

To state a claim for breach of fiduciary duty under ERISA, the plaintiff must plead: (1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff. *See Lopez v. Embry-Riddle Aeronautical University, Inc.*, 2023 WL 7129858, *6 (M.D. Fla. July 12, 2023).

"In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

"ERISA provides that a person can become a fiduciary in one of two ways: 1) Being a 'named fiduciary' in the Plan instrument, 29 U.S.C. § 1102(a)(2); or 2) exercising discretionary control over the Plan or the management of its assets, rendering investment advice for a fee, or having any discretionary authority or responsibility over Plan administration. 29 U.S.C. § 1002(21)(A)." *Bacon v. Stiefel Laboratories, Inc.*, 677 F.Supp.2d 1331, 1340-41 (S.D. Fla. 2010)

In order to establish ERISA fiduciary status within the meaning of 29 U.S.C. § 1002(21)(A), the plaintiff has to show (1) that the unpaid contributions were plan assets and (2) that the defendant "exercised authority and control over the management or disposition of these assets." *In re Luna*, 406 F.3d 1192, 1198 (10th

Cir. 2005).

"The proper rule, developed by caselaw, is that unpaid employer contributions are not assets of a fund unless the agreement between the fund and the employer specifically and clearly declares otherwise." *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 (11th Cir. 2003). However, "[b]y regulation and without the requirement of a particularized agreement, unpaid <u>employee</u> contributions to ERISA funds are assets of those funds." *Id.* at 1013 n.1 (citing 29 C.F.R. § 2510.3-102 (2002)).

## **The Decision to Use Limited Funds to Pay Other Business Expenses is a Business Decision, Not a Breach of Fiduciary Duty**

In *In re Luna*, 406 F.3d 1192 (10th Cir. 2005), the Tenth Circuit concluded that the debtor appellees were not ERISA fiduciaries, thereby affirming the district court's ruling that the debt, representing promised but unpaid monthly employer contributions to various employee-benefit funds, was dischargeable in bankruptcy. *See id.* at 1197. The two appellees each owned 50% of Luna Steel Erectors, Inc., a construction company that employed workers represented by a union, and each served as the company's president/secretary/record-keeper and as vice president. *See id.*

The Tenth Circuit recognized that the debtors "were required to make business decisions with respect to general corporate funds. Such business decisions must not be confused with fiduciary actions. It is well-established that an ERISA fiduciary can 'wear two hats,' meaning an individual can be both an employer and a fiduciary." *Id.*

at 1207.  "Therefore, as the Supreme Court has noted, the 'threshold question' in an action for breach of fiduciary duty is whether the alleged fiduciary 'was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.'"  *Id.* (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)).

"Because virtually every business decision an employer makes can have an adverse impact on an employee benefit plan, *Vanity Corp. v. Howe*, 516 U.S. 489, 527, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (Thomas, J., dissenting), courts must 'examine the conduct at issue to determine whether it constitutes management or administration of the plan, giving rise to fiduciary concerns, or merely a business decision that has an effect on an ERISA plan not subject to fiduciary duties.  *COB Clearinghouse Corp. v. Aetnz U.S. Healthcare, Inc.*, 362 F.3d 877, 881 (6th Cir. 2004) (citation and quotation omitted).  This is so even where some of the decisions personally benefitted the employer, such as some of the payments made by the Lunas to themselves for personal expenses."  *In re Luna*, 406 F.3d at 1207.  The Tenth Circuit concluded that the Lunas' "decision to use their limited funds to pay other business expenses rather than to make contributions to the Funds was a business decision, not a breach of fiduciary duty."  *Id.*  Although the decision to pay expenses rather than make plan contributions had an adverse impact on the employee-benefit funds, the Tenth Circuit declined "to impute fiduciary status to the Lunas based on this fact alone."  *Id.* at 1208.

## Plaintiff's Count I for Breach of Fiduciary Duty Under ERISA

Count I of Plaintiff's Complaint alleges a breach of fiduciary duty under ERISA. Plaintiff has identified no plan instrument that identifies FRIEDMAN or any of the corporate Defendants as a fiduciary under either health insurance plan. Therefore, to prove her claim, Plaintiff must establish that Defendants exercised discretionary control over the plan or the management of its assets. *See Bacon*, 677 F.Supp.2d at 1340-41.

## FRIEDMAN is Not an ERISA Fiduciary

In her Trial Brief, Plaintiff argues that FRIEDMAN was in control of Plan assets because "he had authority over the general operating account, which contained unsegregated plan assets." (Doc. No. 49 ¶ 27). Plaintiff further argues that FRIEDMAN was involved with the insurance plans by speaking to Florida Blue "on behalf of the company," executing the United Healthcare contract in March 2022, being involved in discussions with United Healthcare regarding reinstating the insurance in summer 2022, negotiating unsuccessfully with United Healthcare, and making the decision "not to move forward" when negotiating reinstatement of health insurance. (Doc. No. 49 ¶¶ 28-34).

FRIEDMAN is not an ERISA fiduciary because he did not exercise authority and control over the management or disposition of the plan assets, which Plaintiff contends are the employee payroll deductions. *See In re Luna*, 406 F.3d at 1198. FRIEDMAN, however, does not make decisions on day-to-day matters. *See* Exhibit

11

1, ¶¶ 19, 20.  He does not control the financials for FCHS, FCMG, FCHS, or EMERGE and he does not manage any of the finances as far as moving or transferring money. *See* Exhibit 1, ¶ 21.  He does not maintain the payables and does not make decisions on what gets paid.   *See* Exhibit 1, ¶ 22.   Significantly, he does not make determinations as to who is being paid out of what.  *See* Exhibit 1, ¶ 25.  As FRIEDMAN did not exercise authority or control over the employee payroll deductions, he is not an ERISA fiduciary.

### **FRIEDMAN Did Not Breach a Fiduciary Duty Under ERISA**

In her Trial Brief, Plaintiff argues that FRIEDMAN breached his duty while acting in a fiduciary capacity because be failed to ensure that plan assets were used solely for their intended purpose and by using them for general expenses, including employee payroll.   (Doc. No. 49 at 17).

FCMG simply did not have the funds to pay the premiums for the United Healthcare plan because FCHS, FCMG, and FCID, whose Chapter 11 bankruptcy cases were jointly administered for procedural purposes, were emerging from bankruptcy in April 2022 and were required to make court-ordered bankruptcy payments. *See* Exhibit 1, ¶¶ 15, 16.

More importantly, Plaintiff cannot establish that  any of the Defendants, and particularly FRIEDMAN, was acting as a fiduciary – that is, performing a fiduciary function – when taking the action being complained of.  *See Pegram*, 530 U.S. at 226.  Plaintiff contends that FRIEDMAN used the plan assets (the employee payroll

12

deductions) for general expenses including employee payroll. As the Tenth Circuit recognized in *In re Luna*, 406 F.3d 1192 (10th Cir. 2005), Defendants' business decisions with regard to funds in the general operating account must not be confused with fiduciary actions. *See id.* at 1207.

In other words, Defendants' decision to pay expenses of the business, including employees' payroll, with their limited funds does not amount to a breach of fiduciary duty. It does not constitute the management or administration of the plan but, rather, a business decision to try to keep the business afloat. It is undisputed that the corporate Defendants had been having serious, ongoing financial issues dating back to when they exited bankruptcy. Some employees were not able to be paid the entirety of their earned wages and there simply were not funds available to pay the health insurance premiums for either Florida Blue or UnitedHealthcare. Finally, once Florida Blue and UnitedHealthcare canceled their policies, there was no longer any plan which Defendants could manage or administer.

### Plaintiff's Count II for Violation of COBRA Notice

Plaintiff states that she went on medical leave on April 9, 2022, and that her employment was terminated in September 2022. She characterizes her medical leave in April 2022 as a qualifying even and states that Defendants failed to provide her with COBRA notice at any point in time.

Plaintiff concedes that the United Healthcare plan was canceled back to April

13

1, 2022. In fact, the insurance premium was never paid and the policy lapsed as if it had never existed.

"COBRA requires an employer to provide the option of continued coverage to a 'qualified beneficiary who would lose coverage under the plan as a result of a qualifying event.'" *Kobold v. Aetna U.S. Healthcare, Inc.*, 258 F.Supp.2d 1317, 1324 (M.D. Fla. 2003) (citing 29 U.S.C. § 1161). "With respect to a qualifying event, the term 'qualified beneficiary' includes a 'covered employee.'" *Kobold*, 258 F.Supp.2d at 1324 (citing 29 U.S.C. § 1167 (3)(B)). "Significantly, however "covered employee' means an individual who is (or was) *provided coverage* under a group health plan.'" *Kobold*, 258 F.Supp.2d at 1324 (citing 29 U.S.C. § 1167(2)) (emphasis in original). Where a plaintiff was never covered under the plan, she is not a covered employee and is, therefore, not a qualified beneficiary entitled to continued medical coverage. *See id. See also Walker v. Doctors Hospital of Hyde Park*, 110 F.Supp.2d 704, 715 (N.D. Ill. 2000) ("However, an employee who is never covered under the employer's healthcare plan is not a 'covered employee' under COBRA, and, therefore, is not entitled to such notification").

Here, Plaintiff was never a covered employee because the United Healthcare plan was terminated retroactively to its effective date of April 1, 2022. Continuance coverage and COBRA notice is dependent on the existence of a plan. Where that plan was terminated such that it was never in effect, Plaintiff was never a covered employee under the plan. Accordingly, she was not entitled to continuation coverage

or to receive COBRA notice.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court enter judgment in favor of FRIEDMAN, FCHS, FCMG, and EMERGE on Counts I and II of Plaintiff's Complaint, and grant such other and further relief as this Court deems just and proper.

Dated: June 10, 2024                    Respectfully Submitted,

                                         /s/ Allan P. Whitehead
                                        Allan P. Whitehead
                                        Florida Bar No. 870927

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 10, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. The foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Allan P. Whitehead
Allan P. Whitehead
Florida Bar No. 870927
James D. Henderson
Florida Bar No. 0084257
Frese, Whitehead, Anderson & Henderson, P.A.
2200 Front Street, Suite 301
Melbourne, Florida 32901
Telephone: 321.984.3300
Facsimile: 321.951.3741
awhitehead@fresewhitehead.com
jhenderson@fresewhitehead.com
Attorneys for Defendants

## SERVICE LIST

Joseph C. Wood, Esq.
office@abwlegal.com
wood@abwlegal.com
Arcadier, Biggie & Wood, PLLC
2815 W. New Haven, Suite 304
Melbourne, FL 32904
Telephone: 321.953.5998
Facsimile: 321.953.6075
Attorney for Plaintiff, Emelyn Bonilla
***served by CM/ECF***

16