**ORIGINAL**

407.423.9900
Fax 407.841.2779
Toll Free 855-MYDEPOS

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

```
 1   UNITED STATES DISTRICT COURT
     MIDDLE DISTRICT OF FLORIDA
 2   ORLANDO DIVISION
     Cause No. 22-CV-1596-RMN
 3
     JEAN DECARLO 22-CV-1596-RMN
 4   MYRNA PINEIRO 22-CV-1574-RMN
     KIMBERLY GOUDE 22-CV-1511-RMN
 5   KEITH NYBERG 22-CV-1567-RMN
     YOLANDA BERTSCHY 22-CV-1658-RMN
 6   MICHELLE CIOFFI 22-CV-2317-RMN
     THERESA DAVIDSON 22-CV-2361-RMN
 7   BETTY BORGOS 23-CV-00475-RMN
     PENELOPE ROBERGE 23-CV-00458-RMN
 8   PLAINTIFFS,

 9   V.

10   EMERGE HEALTHCARE GROUP, LLC,
     FCID MEDICAL, INC.,
11   FIRST CHOICE MEDICAL GROUP OF BREVARD, LLC,
     FIRST CHOICE HEALTHCARE SOLUTIONS, INC. AND
12   LANCE FRIEDMAN, INDIVIDUALLY.
     DEFENDANTS.
13   _____/
     VIDEOCONFERENCE DEPOSITION OF JULIE HARDESTY
14   DATE:      JULY 17, 2023
     REPORTER:  KAITLYN HARRIS
15   PLACE:     ALL PARTIES APPEARED VIA VIDEOCONFERENCE

16

17

18

19

20

21

22

23

24

25
```

400 North Ashley Drive, Suite 2600     100 East Pine Street, Suite 308     4651 Salisbury Road, 4th Floor
TAMPA, FL 33602                        ORLANDO, FL 32801                    JACKSONVILLE, FL 32256
                                       CORPORATE

```
 1                      APPEARANCES

 2  ON BEHALF OF THE PLAINTIFFS, JEAN DECARLO, ET AL.:
    Joseph C. Wood, Esquire
 3  Arcadier, Biggie & Wood, PLLC
    2815 West New Haven, Suite 304
 4  Melbourne, Florida 32904
    Telephone No.: (321) 953-5998
 5  E-mail: wood@abwlegal.com
    (Appeared via videoconference)
 6
    ON BEHALF OF THE DEFENDANTS,
 7  EMERGE HEALTHCARE GROUP, ET AL.:
    James Henderson, Esquire
 8  Frese Whitehead
    2200 Front Street
 9  Suite 301
    Melbourne, Florida 32901
10  Telephone No.: (321)-984-3300
    E-mail: jhenderson@fresewhitehead.com
11  (Appeared via videoconference)

12  Also Present:
    Henrietta Wegener, Law Intern
13  Phil Keller, Corporate Representative

14

15

16

17

18

19

20

21

22

23

24

25
```

**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1                          INDEX

 2                                          Page

 3  PROCEEDINGS                              5

 4  DIRECT EXAMINATION BY MR. WOOD           7

 5

 6                        EXHIBITS

 7  Exhibit                                  Page
```

```
 8    1 - Response to Interrogatories - Borgos    23

 9    2 - Employee FCMG - Reinstatement Option    32

10    3 - E-mail chain from June of '22           59

11    4 - RE: UHC has been cancelled back

12        to 4/30/22                              63

13    5 - Re: United Healthcare                   67
```

```
14

15

16

17

18

19

20

21

22

23

24

25
```



**MILESTONE** | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1                    STIPULATION

2

3  The videoconference deposition of Julie Hardesty taken

4  remotely on Monday the 17th day of July 2023 at

5  approximately 1:02 p.m.; said deposition was taken

6  pursuant to the Florida Rules of Civil Procedure.

7

8  It is agreed that Kaitlyn Harris, being a Notary Public

9  and Court Reporter for the State of Florida, may swear

10 the witness and that the reading and signing of the

11 completed transcript by the witness is not waived.

12

13

14

15

16

17

18

19

20

21

22

23

24

25



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
1              PROCEEDINGS

2         THE REPORTER:  All right, will all parties

3    except for the witness please state your appearance,

4    how you're attending, and your location?

5         MR. WOOD:  Joseph Wood on behalf of the

6    plaintiffs.  I am in my office in Melbourne,

7    Florida.

8         MR. HENDERSON:  James Henderson here on behalf

9    of the defendants.  I am also in my office in

10   Melbourne, Florida, appearing via Zoom.

11        MR. WOOD:  And we also have Henrietta Wegener.

12   I didn't get that right, but she is an intern from

13   my office who's also on to observe.

14        THE REPORTER:  All right.  Ms. Hardesty, can

15   you please say your full name for the record?

16        THE WITNESS:  Julie Hardesty.  Do you need me

17   to spell my last name?

18        THE REPORTER:  Do you have your ID with you?

19        THE WITNESS:  Yes, I do.

20        THE REPORTER:  Show that to the camera, please.

21   Back it up just a little bit so it can clear up.

22   Good, right there.  Perfect.  All right, well --

23        THE WITNESS:  Did you get it?

24        THE REPORTER:  Yes.

25        THE WITNESS:  Okay.
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

```
 1          THE REPORTER:  You're good.  Do all parties

 2     agree that the witness is, in fact, Julie Hardesty?

 3          MR. WOOD:  It appears that way.

 4          MR. HENDERSON:  I'm in agreement.

 5          THE REPORTER:  All right.

 6          MR. KELLER:  Also in attendance is Phillip

 7     Keller as a corporate representative.

 8          THE WITNESS:  Oh, and I'm --

 9          MR. KELLER:  Also --

10          THE WITNESS:  -- at the corporate office.

11          MR. KELLER:  Also in Melbourne, Florida.

12          THE WITNESS:  Melbourne, Florida.

13          THE REPORTER:  Okay.  Perfect.

14          MR. WOOD:  Is there anyone else in attendance

15     that we are not aware of?

16          THE WITNESS:  No.

17          MR. WOOD:  Okay.

18          MR. KELLER:  Not from our standpoint, and I

19     can't --

20          MR. WOOD:  Okay.

21          MR. KELLER:  -- comment on the other parties.

22          MR. WOOD:  Okay.  All right --

23          THE REPORTER:  All right, I got to get her

24     sworn in real quick.

25          MR. WOOD:  There we go.  All right.
```



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1          THE REPORTER:  Ms. Hardesty, will you please

 2     raise your right hand?  Do you solemnly swear or

 3     affirm the testimony that you are about to give will

 4     be the truth, the whole truth, and nothing but the

 5     truth?

 6          THE WITNESS:  Yes.

 7          THE REPORTER:  All right.  Now we can go ahead.

 8               DIRECT EXAMINATION

 9          BY MR. WOOD:

10     Q.   Okay.  Good afternoon, Ms. Hardesty.  My name

11 is Joseph Wood.  I represent a number of employees who

12 are involved in litigation with the First Choice, or

13 Emerge Healthcare companies.  Offline, you corrected me

14 on the First Choice.  I've been referring to this as

15 Emerge.  It appears that that's what they've rebranded

16 as most recently.  There are a number of different

17 corporate entities that are involved.  Typically

18 speaking --

19     A.   Emerge is just a DBA, and the company is First

20 Choice Healthcare Solutions.

21     Q.   Okay.  And we'll kind of go through that, but

22 when I say Emerge, I want you to understand that I'm

23 really referring to First Choice Healthcare Solutions,

24 FCID, FC Medical Group, and then there's an Emerge

25 Healthcare Group of Brevard, LLC, I believe.  All of
```



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

1  them are what I'm referring to as Emerge, or First

2  Choice if I do use that; do you understand that?

3      A.  Yes, sir.

4      Q.  Okay.  You have indicated that you are sitting

5  at the offices of Emerge.  Mr. Keller is there.  Today's

6  deposition is your testimony based on your knowledge.  We

7  don't need help from anybody else.  Please treat this as

8  though you are sitting in the courtroom at the

9  courthouse, next to a judge, on the witness stand.  So

10  first, let me ask you, have you had your deposition

11  taken previously?

12      A.  Not for this, but I have --

13      Q.  In any -- in any matter.

14      A.  Yes, sir.

15      MR. WOOD:  Okay, so I'm going to ask you some

16      questions that give rise to the lawsuits that have

17      been filed.  If you don't hear a question from me,

18      let me know and I will repeat it.  If you don't

19      understand a question, let me know and I can try to

20      rephrase it.  If you need to use the restroom, stop,

21      take a break, whatever, we can do that.  I try to go

22      about an hour before we take a break, and we

23      shouldn't be going for too long on this today, so

24      just stop me and let me know. We'll try to get

25      through a question or a document before we really

**MILESTONE** | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    have a hard stop, and we'll let you take a break.

2         THE WITNESS:  Thank you.

3         BY MR. WOOD:

4    Q.   If you've answered a question that I've asked,

5    I'm going to assume that you heard the question, that

6    you understood the question, and you've given me your

7    best recollection.  The testimony today is being taken

8    down by the court reporter.  Because of that, we need a

9    clean record.  Please try to let me finish my question

10   before you begin your answer, and I will do my best to

11   allow you to finish your answer before I begin my next

12   question.  We also need a clean record with yes or no

13   answers where appropriate.  Uh-huhs, uh-uhs, head

14   shakes, do not get translated onto the transcript, so if

15   you catch yourself doing it, please try to correct

16   yourself.  If I see that you've given some kind of a

17   nonverbal answer, I will also try to just bring out a

18   clear verbal response.  Do you understand the

19   instructions so far?

20   A.   Yes, sir.

21   Q.   Okay.  And Ms. Hardesty, sitting here today,

22   do you work for any of the First Choice or Emerge

23   companies?

24   A.   I am a subcontractor for First Choice.

25   Q.   Okay.  You're a 1099 contractor, right?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1       A.   Yes, sir.

2       Q.   And in fact, with the exception of Phil and

3  Lance Friedman, everyone who works for the company is a

4  1099 at this point, right?

5       A.   Yes, sir.

6       Q.   Before you were a 1099 -- let me strike that.

7  You became a 1099 in January of this year, right?

8       A.   Yes, sir.

9       Q.   Before that time, you were a W-2 employee,

10 correct?

11      A.   Yes, sir.

12      Q.   Which entity do you know employed you?

13      A.   First Choice Healthcare Solutions,

14 Incorporated.

15      Q.   And that is the parent corporation of all of

16 these subsidiaries; is that right?

17           MR. HENDERSON:  Objection.

18      A.   Yes, sir.

19           BY MR. WOOD:

20      Q.   And your job duties working for First Choice

21 -- or, let me start here.  What was your job title?

22      A.   Controller.

23      Q.   And as controller, what were your job duties?

24      A.   Day-to-day operations, month-end close,

25 journal transactions, preparing financials.

**MILESTONE** | **REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

1    Q.   You said that you were employed by First

2  Choice, the parent corporation.  Did you do work for any

3  of the subsidiaries?

4    A.   I did a consolidation of the subsidiaries.

5    Q.   Can you explain what that means?

6    A.   Yes.  FCID and FCMG are wholly-owned

7  subsidiaries of First Choice Healthcare Solutions, so in

8  order to prepare financials, I had to do consolidated

9  financials.

10    Q.   Okay.  Did the subsidiaries have their own

11  controller, or were you it?

12    A.   I'm it.

13    Q.   Okay.  Did you have the ability to hire or

14  fire any employees of First Choice or its subsidiaries?

15    A.   No, sir.

16    Q.   Do you know who did?

17    A.   Final approval came from Lance Friedman.

18    Q.   Okay.  You mentioned consolidation of the

19  subsidiaries under the parent.  Were you involved at all

20  with the preparation, review, any aspect of having taxes

21  filed on behalf of the entities?

22    A.   Yes, sir.

23    Q.   Okay.  Did they file a consolidated tax

24  return?

25    A.   Yes, sir.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

```
 1        Q.   And primarily during today's deposition, we're
 2   going to be talking about the time frame of 2001, 2002,
 3   and a little bit into 2003, just because of the
 4   transition in January, but primarily, we're looking at
 5   '21, '22, okay?
 6        A.   Okay.  I'm confused.  2001 --
 7             MR. HENDERSON:  Joseph --
 8        A.   -- '02, and '03 are --
 9             MR. WOOD:  Sorry, sorry.
10             MR. HENDERSON:  Yes.
11             BY MR. WOOD:
12        Q.   Not 20 years ago.  2021 and --
13        A.   My brain is bad.  That would be -- that would
14   be a real hard shot there.
15        Q.   Well, you know, I've taken a few other depos
16   which did pertain to those dates in the last week, so I
17   apologize.  Today, we are talking about 2021, 2022, and
18   a bit into 2023.  So when I ask you questions, unless,
19   you know, you want to clarify, I'm really asking about
20   that time frame, okay?
21        A.   Yes, sir.
22        Q.   Okay.  So do you know if a tax return was
23   filed for 2021?
24        A.   No, sir.
25        Q.   And I'm going to assume that 2022 has also not
```

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1  been filed; is that right?

 2       A.   No, sir.

 3       Q.   When is the last year that a tax return was

 4  filed?

 5       A.   2019, I believe.

 6       Q.   Okay.  Since the company came out of

 7  bankruptcy, have they filed a tax return?

 8       A.   No, sir.

 9       Q.   Okay.  While the companies were in bankruptcy,

10  did they file tax returns?

11       A.   No, sir.

12       Q.   Prior to them entering bankruptcy, they filed

13  tax returns, correct?

14       A.   Yes, sir.

15       Q.   Okay.  And that was the last one, I guess,

16  that you were involved with, was 2019?

17       A.   Correct.

18       Q.   The books of the company, when I'm talking

19  about books, I'm talking about profit, loss, that kind

20  of thing, you're involved with that, correct?

21       A.   Yes, sir.

22       Q.   Okay.  Do the subsidiaries and the parent, do

23  they maintain separate books?

24       A.   Yes, sir.

25       Q.   And do the companies transfer -- transfer sums
```

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1   of money between the entities?  For instance, would

 2   FCHS, the parent, transfer money into, say, FCID or

 3   FCMG?

 4        A.   Yes, sir.

 5        Q.   Okay.  And what would be the purpose of those

 6   transfers?

 7        A.   Operating --

 8             MR. HENDERSON:  Objection.

 9        A.   General operating activities.

10             BY MR. WOOD:

11        Q.   Okay.  So if I can give you an example, maybe,

12   would a transfer be made to, say, FCMG to cover payroll

13   for a certain pay period?

14        A.   Yes.

15        Q.   Okay.  And I'm not referring to a specific pay

16   period, I'm just giving a kind of a hypothetical.  The

17   FCID, are you familiar with its business?

18        A.   Yes.

19        Q.   What does it do to generate revenues?

20        A.   Nothing.

21        Q.   Okay, so what did FCID do?

22        A.   It was a holding company for the medical

23   group.

24        Q.   Okay, so the medical group, that's FC -- First

25   Choice Medical Group, correct?
```

**MILESTONE** | **REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

```
 1        A.    Yes.

 2        Q.    And the First Choice Medical Group, if I

 3   understand correctly, employed the healthcare providers,

 4   the doctors, maybe lower-level healthcare providers; is

 5   that fair to say?

 6        A.    Direct healthcare providers, which are MAs,

 7   PAs, physical therapists, and doctors.

 8        Q.    And at some point in time around April of

 9   2022, the administrative staff was also merged into FC

10   Medical Group, right?

11        A.    For payroll purposes, when we went to TriNet,

12   it was merged to one company, but they were reported on

13   FCID Medical still for the P&L.

14        Q.    Okay, so the administrative staff salaries,

15   for instance -- or, I guess, not salaries, but wages,

16   would've been reported on FCID's P&Ls, but the wages

17   were paid by FC Medical Group; is that what I'm hearing?

18        A.    Yes.

19        Q.    Okay, because the paychecks themselves changed

20   for some of these people from --

21        A.    It -- it was administrative and clerical.

22        Q.    Okay.  The employees who were affected by this

23   change, their job duties didn't change, correct?

24        A.    No.

25        Q.    Do you know if they were even informed of this
```



**MILESTONE** | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

1   change?

2       A.   They were still FCID employees.  The payroll

3   was merged, so I had less fees to pay when we used an

4   outside source.

5       Q.   Okay.

6       A.   They still worked for FCID Medical,

7   Incorporated.

8       Q.   Were -- this took place in 2022.  Has the

9   company issued W-2s for the year 2022?

10      A.   Yes.  All of the W-2s came from FCMG because

11  that's where the payroll was captured, but it was

12  allocated to FCID for reporting purposes.

13      Q.   Now, I think we said that the transition to FC

14  Medical Group took place in about April, which means

15  that these employees would've received paychecks from

16  FCID for the first quarter.  Did they -- did any of them

17  receive a W-2 from FCID, or did the entire yearly wages,

18  were those represented on the W-2 from FC Medical Group?

19          MR. HENDERSON:  Objection.  Form.

20      A.   The entire W-2 wages were reported on First

21  Choice Medical Group.

22          BY MR. WOOD:

23      Q.   Okay.  I'm going to assume that you are aware

24  of the fact that certain employees have not received, or

25  not been paid, all of their wages for work completed

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1  within 2022 and 2021.  Well, 2022, really.
 2            MR. HENDERSON:  Objection.  Form.
 3       A.   I'm -- you said 2021 and --
 4            BY MR. WOOD:
 5       Q.   So let me -- let me clarify.  And before we
 6  get there, Mr. Henderson's going to make objections
 7  during my questioning and your answering.  With the
 8  exception of an objection and a direction to you to not
 9  respond, which is probably not going to happen here, you
10  are required to respond.  And the objection is really
11  just to preserve any objections he may have to the
12  question. It could be minor things with the way that I
13  phrased the question, it could be something else, but
14  please don't interpret it or try to interpret it any
15  other way.  Just let him make the objection, and then
16  try to respond as best you can.  The --
17       A.   I -- I was having a hard time hearing him
18  before, if he did object --
19       Q.   Okay.
20       A.   -- so I will need him to speak up.
21       Q.   Well, so the objection really isn't too
22  important for you.  It's more important for the court
23  reporter.  The only time the objection will be important
24  for you is the direction, do not respond.  And like I
25  said, I don't foresee that happening today, and if you
```

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  were -- if he directed you to respond, and I hear that,

2  and you keep on going, I will tell you to stop, but

3  probably things we don't need to cover today.

4      A.   Okay, thank you.

5      Q.   The question -- so the lawsuits that we've --

6  that I'm here to ask about today pertain to unpaid wages

7  for a number of employees.  They also pertain to certain

8  issues pertaining to the healthcare benefits of the

9  employees.  The healthcare benefit issue takes place

10 beginning in November of 2021, the wages are in 2022,

11 and then there's another issue with the healthcare in

12 2022.  So my last question, I did talk about asking

13 about wages in 2021 and 2022.  In reality, I think all

14 of the wages that are alleged to be owed come in 2022.

15 So my question to you is, are you aware of the fact that

16 certain employees of the Emerge Healthcare Group, or

17 First Choice, worked certain hours and didn't get paid?

18      A.   Yes.

19      Q.   Okay.  And you are aware that employees had

20 deductions from their paychecks for healthcare that they

21 did not receive, or healthcare insurance?

22      A.   Yes.

23      Q.   Okay.  And are you aware of that through your

24 role as controller of the companies?

25      A.   Yes.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1        Q.   Sitting here today, are you owed any money in
 2   the form of wages from the companies?
 3        A.   Subcontractor wages?
 4        Q.   Well --
 5        A.   Yes.
 6        Q.   The subcontractor, quote-unquote, "wages,"
 7   would've been for work completed after January of this
 8   year, right?
 9        A.   Yes.
10        Q.   Okay.  I'm asking you about wages earned by
11   you in 2022, or, I guess, the first week of 2023, while
12   you were still a W-2.  Are you owed any wages from that
13   time frame?
14        A.   No.
15        Q.   Okay.  Were you ever owed wages from that time
16   frame?
17        A.   Yes.
18        Q.   When were you paid those wages?
19        A.   In April of 2023.
20        Q.   Do you recall how much you were owed?
21        A.   No, I'm sorry.
22        Q.   So sitting here today, you are not owed any
23   wages from the time frame when you were a W-2 employee?
24        A.   No.
25        Q.   Have you calculated how much employees are due
```

**MILESTONE | REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1   in wages in or from the year 2022?

 2        A.   Yes.

 3        Q.   And that calculation, is it accurate as of

 4   today?

 5        A.   Yes.

 6        Q.   Okay.  The calculation, is it on a spreadsheet

 7   somewhere?

 8        A.   Yes.

 9        Q.   And I'm assuming the spreadsheet is maintained

10   somewhere in the office where you're sitting today,

11   right?

12        A.   Yeah.  Well, I work from home --

13        Q.   Okay.

14        A.   -- so -- so --

15        Q.   And so --

16        A.   -- computer at home.  Sorry.

17        Q.   It's on your computer at home.  This document

18   is not a private document of yours, though, it's a --

19   it's a document that you created on behalf of the

20   companies, right?

21        A.   Yes.

22             MR. HENDERSON:  Objection.  Form.

23             BY MR. WOOD:

24        Q.   Have you provided that document to anybody in

25   the last 12 months?
```

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

```
 1        A.   Yes.
 2        Q.   Okay.  Do you know if anyone has requested
 3   that you provide that document as part of this lawsuit?
 4        A.   No.
 5        Q.   Okay.  Sitting here today, you're not on your
 6   computer, you're on Phil's.
 7        A.   Right.
 8        Q.   Do you have access to that document?
 9        A.   No.
10        Q.   Okay.  Do you recall the total amount in wages
11   that the document shows is owed to employees?
12        A.   No.
13        Q.   On the document we're talking about, does it
14   show active employees and prior employees?  Are they
15   separated?
16        A.   The only monies due is to prior employees --
17        Q.   Okay.
18        A.   -- that I'm tracking.
19        Q.   And when you say prior employees, do you mean
20   that they're no longer W-2s, or that they're no longer
21   working for the business at the moment?
22        A.   No longer working for the business.
23        Q.   Okay.  Prior to today, were you made aware of
24   the lawsuits that had been filed against First Choice
25   for back wages?
```

**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

 1        A.   Yes.

 2        Q.   Okay.  And do you know if you've calculated

 3   the back wages for each of the employees that have filed

 4   lawsuits against the company?

 5        A.   I have.

 6        Q.   Okay.  And those calculations would be in the

 7   same spreadsheet we're talking about, right?

 8        A.   They're in a spreadsheet that I used for the

 9   interrogatories --

10        Q.   Okay.

11        A.   -- because I had to reduce them for the

12   payment that I made to the Department of Labor for gross

13   wages.

14        Q.   Okay, so the interrogatory responses, which I

15   frankly did not have on my list of things to talk to you

16   about, you helped provide answers to the interrogatory

17   responses?

18        A.   Yes.

19        Q.   Okay.  And there were questions, and I'm

20   trying to pull up an example for me to review.  Lance --

21   just bear with me for a minute.  Okay, so I'm looking at

22   Ms. Borgos, but the questions were all the same for

23   everyone, I think, primarily.  Question 10 says, "Please

24   calculate the amount of wages which you believe remain

25   unpaid to Plaintiff during the relevant time period,"

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1   and --
 2        A.   Correct.
 3        Q.   -- you're saying that you helped formulate the
 4   response to this question?
 5        A.   Yes, sir.
 6        Q.   And when there's a response here, in this
 7   example, anyway, it says, "$1,312.07."  You -- what
 8   you're saying is that this figure is after an amount
 9   that you paid to the Department of Labor?
10        A.   Sir, I don't know what the figure is for
11   Betty --
12        Q.   And --
13        A.   -- and as far as I know, they have not handed
14   you the interrogatories with answers.
15        Q.   Okay, so let me -- we'll start with the
16   Exhibit 1 so -- just so we're on the same page.
17             MR. WOOD:  This will be Plaintiff's 1, and I
18        just picked a random one out to go over.
19             (EXHIBIT 1 MARKED FOR IDENTIFICATION)
20             BY MR. WOOD:
21        Q.   Now, this is a response that we received.
22   This is First Choice Medical Group of Brevard, LLC, and
23   as I scroll through, you can see that I do have a
24   response here to number 10.
25        A.   Who prepared this response?
```

**MILESTONE** | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1        Q.   That I just received it, so I'm not involved

 2   in, on your end, as to who prepared the discovery

 3   responses.  I believe in the last few weeks, we've

 4   received a verification page as well.  I haven't gone

 5   through that.  This response came from somewhere, and

 6   based on what you've told me, it sounds like these --

 7   this figure, the 1,312.07, was -- probably came from

 8   you; is that right?

 9        A.   I would have to verify that.

10        Q.   Okay.

11        A.   I was reviewing the interrogatories this

12   weekend --

13        Q.   Okay.

14        A.   -- and found errors --

15        Q.   Okay.

16        A.   -- that were going to be corrected with Mr.

17   Henderson's office.

18        Q.   Let's -- what errors did you see in the

19   answers to interrogatories that -- when you reviewed

20   them this past weekend?

21        A.   The original interrogatories didn't include

22   the Department of Labor calculations --

23        Q.   Okay.

24        A.   -- and some of the answers were incorrect,

25   regarding Emerge Healthcare and First Choice Healthcare
```

**MILESTONE** | **REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    Solutions, since none of the employees work directly for

2    those entities.

3         Q.   Okay.

4         A.   Emerge is a DBA.

5         Q.   So I've heard that quite a bit, and -- are you

6    familiar with Sunbiz, what Sunbiz is?

7         A.   Yes.

8         Q.   And have you reviewed Sunbiz for all of these

9    related entities?

10        A.   Emerge Healthcare was set up, but it does not

11   have a federal ID number.  It never had a bank account,

12   has never had profit and loss or checking accounts.  It

13   -- it -- it was set up because we were going to move

14   into it, but that never occurred.

15        Q.   Okay.  Now, on Sunbiz, it does list Emerge

16   Healthcare Group, LLC as a fictitious name, which is a

17   DBA, doing business as.  They also list it as a -- an

18   entity with a document number.  But I agree with you,

19   there's no FEIN, but there is a document number, and

20   it's a -- it's a formed LLC, and in fact, it filed an

21   annual report this year in 2023.

22        A.   Correct.

23        Q.   Is it your understanding that fictitious names

24   file annual reports?

25             MR. HENDERSON:  Objection.  Form.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1      A.   I -- I don't know what that means.

 2           BY MR. WOOD:

 3      Q.   Okay, so what is your understanding of what a

 4  fictitious name or DBA is?

 5           MR. HENDERSON:  Objection.  Form.

 6           MR. WOOD:  I'm just asking her understanding.

 7      A.   It's a doing business as.

 8           BY MR. WOOD:

 9      Q.   Okay.

10      A.   We were, again, trying to transition from

11  First Choice, because of the bankruptcy issues, into

12  Emerge Healthcare.  We set up the company but never

13  moved in.

14      Q.   Okay, so you don't dispute that Emerge

15  Healthcare Group, LLC was a formed company?

16      A.   We filed Sunbiz to reserve the name.

17      Q.   Okay.  What --

18      A.   Okay.

19      Q.   I think there's confusion, because there's two

20  different things on Sunbiz.  And there is a fictitious

21  name, and you can search under fictitious names --

22      A.   Uh-huh.

23      Q.   -- and that is -- well, I can find out who

24  it's owned by.  There's also a company that was

25  incorporated or formed, and they're two different
```

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1  things.

 2       A.   I understand.

 3       Q.   Okay.  Do you know who owns the fictitious

 4  name?

 5       A.   First Choice Medical Group of Brevard, I

 6  believe, owns the fictitious name.

 7       Q.   Okay, so First Choice Medical Group of Brevard

 8  owns the fictitious name, Emerge Healthcare Group, LLC?

 9       A.   I don't know that that's the fictitious name,

10  sir.

11       Q.   Okay.

12       A.   I'm confused as to which one was the

13  fictitious name.  Okay, I see it.

14       Q.   So we'll -- give me -- just give me a second.

15           MR. WOOD:  I'm not going to mark this, James.

16       It's -- we're looking at Sunbiz, for the record, and

17       I just want to make sure that we're on the same page

18       as we search this.  So I'm showing the witness two

19       different things.

20           BY MR. WOOD:

21       Q.   One, the fictitious name detail, it's Emerge

22  Healthcare Group, LLC.

23       A.   Yes.

24       Q.   It is owned by First Choice --

25       A.   First Choice --
```

**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    Q.   -- Medical Group of Brevard --

2    A.   -- Medical Group of Brevard, LLC.

3    Q.   Okay.  And this was formed in June of '22.

4  It's -- it goes through 2027.

5    A.   Yes.

6    Q.   Separately, there is a company, Emerge

7  Healthcare Group, LLC, which was formed around the same

8  time frame, June 9 of 2022, and it filed its annual

9  report to remain active in April of this year.  Do you

10 -- do you see this company?

11   A.   Yes.

12   Q.   Okay.  And you understand that they're

13 different things, right?

14   A.   Yes.

15   Q.   Okay.  This LLC, the company, doesn't do

16 anything, right?

17   A.   No.

18   Q.   Okay.  Do you know why an annual report was

19 filed this year to keep the company active?

20   A.   To keep the name reserved, I think.

21   Q.   But the name -- and I'm not trying to argue,

22 I'm just trying to figure this out, because the name is

23 a different thing, and the name doesn't expire until

24 2027.

25   A.   I -- I do not --

**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1      MR. HENDERSON:  Objection.  Form.

2      A.   I don't know.

3           BY MR. WOOD:

4      Q.   Okay.  Okay.

5      A.   I don't know.

6      Q.   Okay, that -- and that's fine.  I don't

7  either, which is why I'm trying to find out.  It just

8  seems a bit odd, but -- because you have one LLC doing

9  business as another LLC with a fictitious name of a

10 separate entity.  It just -- it's an odd thing to have.

11 But your understanding -- and you have the P&Ls, or you

12 have access to them, maybe not this -- sitting here

13 today, but Emerge Healthcare Group, LLC, the entity,

14 doesn't generate revenue, it doesn't operate at all, is

15 what you're saying?

16     A.   Correct.

17     Q.   Okay.  So let's close this.  So when you

18 reviewed the interrogatories, you said that there was --

19 it was incorrect because the employees didn't work

20 directly for Emerge Healthcare Group LLC, correct?

21     A.   Correct.

22     Q.   And what was the other one?

23     A.   First Choice Healthcare Solutions.

24     Q.   The parent?

25     A.   Incorporated, yes.

**MILESTONE** | **REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

1      Q.   Okay.  Okay.  Were there any other issues that
2  you saw with the answers to interrogatories when you
3  recently reviewed them?
4      A.   I did not review this one, so --
5      Q.   Okay.
6      A.   -- I don't know how to answer.
7      Q.   Okay.  You were consulted in the initial
8  answers to these interrogatories, correct?
9      A.   Yes.
10     Q.   Okay.  And I'll represent to you, as far as I
11  know, that these questions should be the same ones that
12  you reviewed, because I don't know that I've sent new
13  ones out.  Do you recall which questions you were
14  consulted on to provide a response?
15     A.   The dollar amounts due.
16     Q.   Okay.  So it looks like it's just maybe number
17  10 where we say, "Please calculate the amount of wages
18  that are still owed to Plaintiff."  Now, earlier, you
19  had said that this number might have been after you
20  deducted the amount paid to the DOL.  Is that your
21  understanding of how you calculated these figures?
22     A.   Sir, I -- I don't know what these figures here
23  are --
24     Q.   Okay.
25     A.   -- and I don't not -- I don't have them

**MILESTONE | REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  memorized.

2      Q.   I don't expect you to.

3      A.   Okay.  Okay.

4      Q.   I -- I'm not trying to hold you to that.  I

5  can't remember those things, and I've got spreadsheets

6  all over the place with this stuff.

7      A.   Okay, thank you.

8      Q.   I was just trying to figure out the way in

9  which you came to the number, not the exact one, but did

10 you calculate the wages, and then subtract what was paid

11 to the DOL, and then provided a response of the result?

12     A.   Yes.

13     Q.   Okay.  The spreadsheet that we've been talking

14 about, your spreadsheet --

15     A.   But not for this response.

16     Q.   -- do you -- sorry, what?

17     A.   I said, but not for this response.

18     Q.   Okay, okay, and we can close this response.

19 This -- all right.

20          MR. WOOD:  We -- we're marking this, I think,

21      as Plaintiff's 1, and because it's a -- Betty

22      Borgos' Defendant's -- let's see.  First Choice

23      Medical Group answers.  And I'm going to save this

24      in my file right now so we don't lose it.  I'll stop

25      sharing.  Just bear with me for a minute so I --

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1          THE REPORTER:  Is that the same notice?  Is

2     that --

3          MR. WOOD:  Excuse me?

4          THE REPORTER:  Is that the same notice? Because

5     you already had an Exhibit 1, so this would be 2,

6     unless it's the same one.

7          MR. WOOD:  I --

8          THE REPORTER:  You flipped through them too

9     quick.  I couldn't see.

10         MR. WOOD:  I think, James, maybe you can

11    remember, I'm pretty sure the 1 is going to be the

12    interrogatory answers; is that right?

13         MR. HENDERSON:  That's whatever -- that's your

14    call.  I don't --

15         MR. WOOD:  That's what I thought.  If not,

16    we'll --

17         THE REPORTER:  Well, this would be 2.

18         MR. WOOD:  Okay, well, we're going to save this

19    in there.  I did not mark the Sunbiz docs.

20         THE REPORTER:  Right.  Okay --

21         MR. WOOD:  Yeah.

22         THE REPORTER:  -- then it's 2.

23         MR. WOOD:  Okay.

24         THE REPORTER:  Okay.

25          (EXHIBIT 2 MARKED FOR IDENTIFICATION)



**MILESTONE | REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1           MR. WOOD:  Okay.

 2           BY MR. WOOD:

 3      Q.   In the spreadsheet that we've been talking

 4 about, the spreadsheet where you calculated the back

 5 wages, do you know, or do you remember, if you had a

 6 gross amount, and then you had a dollar amount for what

 7 was paid to the DOL, and then a calculated sum?

 8      A.   Yes.

 9      Q.   Okay.  And I'll ask, before we get too far,

10 that you provide a copy of that -- save the document and

11 provide a copy of it to the attorney, Mr. Henderson, so

12 that that can be produced.  I don't think that we've

13 received it.

14           I have a feeling that it's within the

15 documents we've requested, and it certainly would be

16 helpful.  We did receive a document pertaining to the

17 health insurance reimbursement that we'll go over soon.

18 I think it's an e-mail from you, actually, and so --

19 when you worked as a W-2 employee for these entities,

20 where did you physically work?  Were you at home, or

21 were you in an office like you are today?

22      A.   I work from home.

23      Q.   Okay.  Were you involved in payment to any

24 insurance companies?

25      A.   Yes.
```

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

```
 1        Q.   Okay.  And were you involved in communications
 2   with insurance companies to receive payment?
 3        A.   Yes.
 4        Q.   How often would you communicate with insurance
 5   companies about obtaining payment from them?
 6        A.   I don't understand.
 7        Q.   Okay.  My question pertains to billing
 8   insurance companies for services provided to patients,
 9   and obtaining --
10        A.   I'm not -- I'm not involved in that.
11        Q.   Okay.
12        A.   I'm sorry.
13        Q.   Do you -- do you know who is in charge of, I
14   guess we would call it, billing, right?  Who is in
15   charge of billing for the services provided by the
16   providers of First Choice?
17        A.   Phil Keller, our CFO, does the receivable
18   side.
19        Q.   Before you went to 1099, were you a full-time
20   employee, 40 hours a week, or was it a part-time
21   position?
22        A.   Full-time.
23        Q.   Has that changed?
24        A.   No.
25        Q.   What was your involvement in payroll for
```



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1   employees?
 2        A.   I would review payroll and submit it to the
 3   president for approval of payment.
 4        Q.   Okay.  So I spoke with Ruby, Rubelinda
 5   (phonetic), and my understanding is, she was involved
 6   with payroll.  Would she submit something to you?
 7        A.   Yes.
 8        Q.   And that would then be submitted by you to
 9   Lance?
10        A.   Correct.
11        Q.   And Lance would approve of it; is that right?
12        A.   Yes, sir.
13        Q.   And once you had Lance's approval, what would
14   you do?
15        A.   I would tell Ruby to let it go.
16        Q.   Okay.  And if it wasn't approved by Lance,
17   what would happen?
18        A.   It was held.
19        Q.   Okay.  Where -- how or where would it be held,
20   the money?
21        A.   There wasn't money.
22        Q.   Okay.
23        A.   It was payroll calculations.
24        Q.   Okay.  So if Ruby never got the authority from
25   you to pay payroll, is it your understanding that
```

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1   payroll would not be paid?

 2        A.   Correct.

 3        Q.   And you wouldn't provide authority to Ruby

 4   unless and until you got authority from Lance; is that

 5   right?

 6        A.   Correct.

 7        Q.   Okay.  Lance is the ultimate decision-maker on

 8   paying payroll; is that right?

 9             MR. HENDERSON:  Object to the form.

10        A.   Yes.

11             BY MR. WOOD:

12        Q.   There came a time where employees were not

13   timely paid their payroll.  In June of 2022 through the

14   end of many of these employees' tenure, their paychecks

15   stopped; is that your understanding?

16        A.   Yes, sir.

17        Q.   For the time periods where they were working

18   and not getting paid, did you review payroll?  Do you

19   recall reviewing payroll for those times?

20        A.   Yes.

21        Q.   Did you submit those to Mr. Friedman?

22        A.   Yes.

23        Q.   Did he give you approval?

24        A.   No.

25        Q.   Okay.  Do you recall having a conversation
```



**MILESTONE | REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    with him about that?

2         A.    Yes.

3         Q.    And can you summarize the conversation?

4         A.    No.  Different issues on a -- every week.

5         Q.    Okay.

6         A.    It's cash flow.  You don't have cash in, can't

7    send out checks.

8         Q.    So it is somewhat simplistic, I guess, because

9    I've heard and I understand, these employees weren't

10   paid because the company simply didn't have the money to

11   pay them; is that fair?

12        A.    Correct.

13        Q.    So you had payroll submitted to you, to submit

14   to Lance, and it said, you know, you owe, you, the

15   company, need to pay X dollars in payroll, and you just

16   didn't have it, right?

17        A.    Correct.

18        Q.    So you ended up not paying it, right?

19        A.    Yes.

20        Q.    Were you ever involved in any communications

21   about letting go of the employees before they kept on

22   working without pay?

23        A.    Not specific employees --

24        Q.    Okay.

25        A.    -- but we talked about reduction of payroll as

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          Toll Free **855-MYDEPOS**

```
 1  an emergency.

 2       Q.   Was that done, the reduction?

 3       A.   We did start to do that, yes.

 4       Q.   Okay.  Was that a -- were there affirmative

 5  steps taken by the company, or was there a reduction

 6  simply because the employees didn't want to work for not

 7  -- without pay any more and they left?

 8            MR. HENDERSON:  Objection.

 9       A.   Both.

10            MR. HENDERSON:  Form.

11            BY MR. WOOD:

12       Q.   Both.  Okay.  Now, once an employee left, do

13  you know -- let me strike that.  A number of employees

14  left and were still owed back wages; is that fair to

15  say?

16       A.   Yes.

17       Q.   Once those employees left the employment of

18  First Choice or Emerge, did you -- are you aware of them

19  getting paid their back wages?

20       A.   They did not.

21       Q.   Okay.  And the decision to not pay former

22  employees their back wages would ultimately be made by

23  Lance?

24       A.   Yes, sir.

25            MR. HENDERSON:  Objection.  Form.
```

**MILESTONE** | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

```
 1        A.   I'm sorry.

 2             MR. HENDERSON:  That's fine.

 3             BY MR. WOOD:

 4        Q.   He said an -- he made an objection to the

 5   form. It's a standard objection, but your answer is

 6   fine.

 7             THE WITNESS:  Mr. Henderson, I need you to

 8        speak up.

 9             MR. HENDERSON:  Okay.

10             THE WITNESS:  Thank you.

11             MR. HENDERSON:  I try not to be too intrusive

12        on depositions in order not to get, you know,

13        smacked by the Court.

14             THE WITNESS:  That's okay.

15             BY MR. WOOD:

16        Q.   Yeah, so again, these objections really

17   shouldn't affect your testimony.  He's simply preserving

18   it for reasons that we can -- I can assume and he knows,

19   or we'll know at some point in the future, but it really

20   shouldn't have an effect on your -- on your testimony at

21   the moment.  Were you involved with ordering any

22   supplies for the company?

23        A.   (No verbal response.)

24        Q.   Okay.

25        A.   I'm the controller.  I did the accounting.  I
```

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

 1  did not prepare purchase orders.

 2       Q.   Okay.  And you got to bear with me.  I -- I'm

 3  not there.  I -- sometimes, I even know the answer, and

 4  I'm still going to ask you.  It might sound stupid, but

 5  just bear with me.  I get what you're saying.  You know,

 6  you do the books, you don't do the ordering, that's a

 7  stupid question, move on.  But I got to cover some of

 8  these things so we can get through this.  Since you

 9  dealt with the books, you would be dealing with the

10  gross revenues of all the entities, right?

11       A.   Yes.

12       Q.   And I think it's fair to say that over the

13  years, the revenues have declined, right?

14       A.   Yes.

15       Q.   And do you recall what the gross revenues were

16  for 2021?

17       A.   No, I'm sorry.  Just --

18       Q.   Okay.

19       A.   -- don't have that number.

20       Q.   Now, if I ask you the gross revenues, would

21  you be able to break it up by subsidiary, or would it

22  just be a consolidated figure?

23       A.   Gross revenues are only reported in First

24  Choice Medical Group of Brevard.

25       Q.   Okay.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      **www.MILESTONEREPORTING.com**      **Toll Free 855-MYDEPOS**

 1      A.   That was the practicing company.

 2      Q.   Okay.  So I asked you a specific question

 3 before.  Let me give you a bit -- maybe easier.  Do you

 4 know if the gross revenues for FCMG in 2021 exceeded

 5 $500,000?

 6      A.   I'm really not sure.

 7      Q.   Okay.

 8      A.   That was when we were hiring doctors at that

 9 time.

10      Q.   Do you know how many doctors you hired?

11      A.   Three or four in 2021.

12      Q.   Do you know if their salaries that were

13 offered to them exceeded $100,000 a person?

14      A.   Yes.

15      Q.   Okay.  Do you know if the doctors you hired,

16 their contracts combined exceeded $500,000?

17      A.   Yes.

18      Q.   Were (audio cuts out) together an offer

19 package for these people?

20      A.   No.

21      Q.   Okay.  Were you consulted at all to ensure

22 that the revenues of the -- of the companies would be

23 able to cover these salaries?

24      A.   No.

25      Q.   Okay.  Were you involved in preparation of any

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  financial documents while the companies were in

2  bankruptcy?

3     A.   Yes.

4     Q.   Do you recall reporting revenues in the

5  millions while the companies were in bankruptcy?

6     A.   Yes.

7     Q.   Okay.  And did those types of revenues

8  exceeding a million dollars continue while they exited

9  bankruptcy?

10    A.   No.

11    Q.   Did it have a steep cliff?

12    A.   Yes.

13    Q.   Okay.  If I wanted to find out what the gross

14 revenues for the year 2021 was, where would I look?

15    A.   The consolidated profit and loss.

16    Q.   Okay.  And where would something like that be

17 maintained?

18    A.   It's in the computer.

19    Q.   Okay.  And you could easily do a report to

20 pull that figure, right?

21    A.   Yes.

22    Q.   And the same would be true for 2022 and 2020,

23 right?

24    A.   Yes.

25    Q.   Okay.  That consolidated report, would that

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    cover each of the entities, or would it -- I think we

2    talked about being FCMG, or --

3        A.   No, it would be consolidated to the parent

4    company, First Choice Healthcare Solutions.

5        Q.   Okay.  And I'm going to ask that you provide

6    those for 2020 through 2022 to the attorney for Emerge.

7    I'm fairly confident we've requested documents that

8    would -- this would be responsive to.

9            THE WITNESS:  Jim, do I need to write this

10       down, or are you going to send me --

11           MR. HENDERSON:  I'll take note of it.

12           THE WITNESS:  -- the request?

13           MR. WOOD:  Thanks, James.

14           THE WITNESS:  Thank you.

15           MR. KELLER:  You know, sir, I know I'm not

16       supposed to talk, but I believe it's already been

17       submitted.

18           MR. HENDERSON:  And Phil, we'll -- off the

19       record, we'll take care of it.

20           MR. KELLER:  Okay.

21           THE WITNESS:  I -- I feel like they were

22       submitted as well.

23           MR. WOOD:  And James, if you've given them to

24       me, I -- maybe I missed them.  I feel as though I

25       would've seen a P&L for the companies in my review,



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

1     but I do miss things, so -- but this -- it is,

2     obviously, an issue that has been contested.

3     BY MR. WOOD:

4     Q.  It's been alleged the companies generate more

5 than $500,000 in revenue.  I believe that was denied,

6 and therefore, we need to obtain those statements to

7 approve that, but we can deal with that later on.

8     A.  I don't believe I denied it.  I said I do not

9 recall it.

10    Q.  No, no, no, so I'm not saying that you denied

11 it.  I'm referring to a denial within an answer, a

12 pleading in a -- in the lawsuits.  I'm not --

13    A.  Okay.

14    Q.  -- saying that you're denying it, I -- your

15 testimony, I believe, was, I don't recall the figures.

16    A.  Okay.  Thank you.

17    Q.  Okay.  So I'm not -- I'm not trying to put

18 words into your mouth, I'm just trying to give you a

19 background as to where we are in this case.  Let's talk

20 about the insurance policies starting in 2021.  There

21 was a Florida Blue plan that was put in place in that

22 year; do you recall that?

23    A.  Yes, sir.

24    Q.  Were you a beneficiary of that plan?

25    A.  Yes.



**MILESTONE** | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

```
1        Q.   Okay.  And do you recall if that plan was

2   terminated prior to its anticipated end date?

3        A.   Yes.

4        Q.   And that was canceled as of November 30, 2021,

5   right?

6        A.   Yes, sir.

7        Q.   Okay.  And the reason it was canceled is

8   because Florida Blue wasn't paid, right?

9        A.   That is correct.

10        Q.   Were you involved in any of the discussions

11   with Florida Blue about payment?

12        A.   They would call me for collections, but I was

13   not negotiating the payment to them.

14        Q.   So when you would receive a call from these

15   people about collections of what was owed to them, I

16   assume you discussed that with higher-ups; Lance --

17        A.   Correct.

18        Q.   -- for instance?  And --

19        A.   Yes.

20        Q.   -- were you given any kind of direction as to

21   how to respond?

22        A.   Generally, he -- Lance Friedman would speak

23   directly with the insurance companies.

24        Q.   Okay.  As part of the Florida Blue plan, there

25   were deductions made from paychecks, correct?
```

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1      A.   Yes.

2      Q.   And you would've had deductions made from your

3  own paychecks, right?

4      A.   Correct.

5      Q.   And do you recall deductions being made from

6  your paychecks after it was canceled in November of '21?

7      A.   Yes.

8      Q.   And the deductions from the employees'

9  paychecks, including your own, were those -- were the

10  dollar amounts deducted, were they put anywhere?

11      A.   No.

12      Q.   Okay.  So when Emerge would make -- would

13  process these payroll checks, they would just make the

14  deduction on the paycheck and keep the money in their

15  general operating accounts?

16      A.   Yes.

17          MR. HENDERSON:  Objection.  Form.

18          BY MR. WOOD:

19      Q.   Would the same be true for payroll taxes?

20      A.   Yes.

21      Q.   Do you know if payroll taxes were paid timely?

22      A.   No.

23      Q.   So in, let's say, December of '21, do you know

24  if payroll tax, FICA taxes, so on and so forth, were

25  made to the IRS?

---

**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    A.   No.

2    Q.   Sitting here today, have they been paid?

3    A.   No.

4    Q.   The 2021 W-2s, I don't have one in front of

5  me, but I'm assuming it showed gross wages, and would it

6  also show payroll taxes withheld?

7    A.   Yes.

8    Q.   Were the W-2s, did they show the payroll taxes

9  that the employers were to pay on them?

10    A.   I'm sorry, I don't understand.  Repeat?

11         MR. WOOD:  Okay.  Why don't we do this?  I'm

12      going to pull a W-2.  Well, why don't we take a --

13      we're about an hour in.  Let's take a five or 10-

14      minute break, I'll get a W-2, I can clarify and

15      clean up these questions, and we can go on from

16      there.  So I'm showing 1:57.  Five after?

17         MR. HENDERSON:  Works for me.

18         MR. WOOD:  Okay, sounds good.

19         THE REPORTER:  Off the record.

20          (OFF THE RECORD)

21         THE REPORTER:  All right, go ahead.

22         MR. WOOD:  Okay.

23         BY MR. WOOD:

24    Q.   Before we went on break for a few minutes, we

25  were discussing W-2s and payroll tax, and while we were

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  on break, I went and grabbed a W-2 offline for the year

2  2021.  I don't want to mark this, I just want to use it

3  as a reference, and let me -- there we go.  Okay, so

4  pretty standard W-2 that we're looking at.  This is for

5  2021, as you can see there.  Wages and tips are the

6  conversation, that's typically the gross wages.  The

7  federal income tax withheld, this is the -- I believe,

8  the employee portion of the federal income tax that was

9  withheld.

10      A.   Yes, sir.

11      Q.   You had indicated that Emerge had not paid the

12  payroll taxes, which I believe would be included in this

13  box, too.  Sitting here today, do you know if the W-2s

14  for these employees, for 2021 and 2022, show an accurate

15  amount of the income taxes withheld and transmitted to

16  the IRS, or just withheld?

17      A.   For 2021, they got two W-2s.

18      Q.   Okay.

19      A.   One was issued directly from Paylocity, which

20  was the payroll company that we used.  100 percent of

21  the taxes withheld and matching were paid.

22      Q.   Okay. And there's another W-2 that was issued?

23      A.   There's a second W-2 from First Choice Medical

24  Group, or FCID Medical.  That was after our relationship

25  with Paylocity ended.  We paid the wages, but we did not



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1  make the Social Security and federal deposits.  We have

2  accrued the liabilities.

3      Q.   Okay.  The W-2s from FCI -- FC Medical Group

4  that we talked about just now, did they show -- do you

5  know if they showed an income tax withheld on them?

6      A.   Yes.

7      Q.   Okay, but that figure was never sent or

8  transmitted to the IRS?

9      A.   Correct.

10     Q.   Okay.  And for 2022, were any federal income

11  taxes that were withheld from paychecks transmitted to

12  the IRS?

13     A.   No.

14     Q.   Now, you earlier indicated that your W-2 wages

15  have been paid back, right?

16     A.   Yes.

17     Q.   Sitting here today, do you know if your income

18  tax figure that was withheld, has that been sent to the

19  IRS?

20     A.   No.

21     Q.   Have you received any notice from the IRS that

22  they were not paid?

23     A.   No.

24     Q.   Has First Choice, any of the entities, have

25  they been in discussions with anyone at the IRS about

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1  making this payment?

 2       A.   No.

 3       Q.   Does the IRS know that these are due?

 4       A.   No.

 5            MR. HENDERSON: Objection. Form.

 6            BY MR. WOOD:

 7       Q.   Okay. Was this a topic that came up during the

 8  DOL investigation?

 9       A.   I -- I don't know.

10       Q.   Okay.

11       A.   I was not involved in the DOL conversations.

12       Q.   Okay.  The amounts of money that was sent to

13  the DOL, would those figures be net figures or gross

14  figures?

15       A.   Gross wages.

16       Q.   Okay, so the wages that were paid to the DOL

17  as part of your agreement, they would have taxes

18  withheld from them, and that would be retained by the

19  IRS, to the best of your knowledge?

20            MR. HENDERSON:  Objection. Form.

21       A.   Not involved in the DOL.  It was gross wages.

22            BY MR. WOOD:

23       Q.   Okay.  Other than insurance and -- let's stop

24  sharing this.  Other than insurance and payroll tax, or

25  income tax, were there any other deductions from
```

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

 1  paychecks that didn't go to what they said they were

 2  going to?

 3          MR. HENDERSON:  Objection.  Form.

 4      A.   I -- I don't know what other deductions we

 5  would be discussing.  No.

 6          BY MR. WOOD:

 7      Q.   Okay.  Okay.  Here on my screen again, this is

 8  Plaintiff's 2.  This is an e-mail from you to Phil, and

 9  to Gillian Lee, and the subject line is, "Employee

10  Insurance Refunds."  This is dated April 4th of 2023, of

11  this year, and there's a spreadsheet attached.  The body

12  that you wrote here says, "See attached per our

13  conversation.  Thanks."  Do you recognize this e-mail?

14      A.   Yes.

15      Q.   Okay.  And you wrote the e-mail, correct?

16      A.   Yes.

17      Q.   And the Excel spreadsheet, which I'm going to

18  open up, you created the spreadsheet?

19      A.   Yes.

20      Q.   Going to try to open it up.  Here it is.

21  Okay. Before we get into the spreadsheet, which, there

22  -- it says -- you wrote, "Per our conversation."  Can

23  you describe that conversation that you had with Phil

24  and Gillian?

25      A.   I don't recall.  They probably said, hey, we

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1   need this.  And I said, okay.

 2       Q.   Okay.  Is it -- is it fair to --

 3       A.   I don't -- I don't know.

 4       Q.   Is it fair to say that you had a conversation

 5   about reimbursing the insurance deductions?

 6       A.   We would like to.  They are accrued

 7   liabilities.

 8       Q.   Okay.  And so -- what was that?  Here.  Okay,

 9   so this is the spreadsheet that was attached.

10       A.   Yes.

11       Q.   Was anyone else involved in making the

12   spreadsheet?

13       A.   No.

14       Q.   Okay, so what you've got here, it says, "Total

15   insurance refund due, active employee refunds," you've

16   got totals.  The active employee refunds, those would've

17   been employees who were -- or contractors at this point,

18   I guess, who were working for First Choice in April of

19   '23?

20       A.   Yes.

21       Q.   And these figures that you've got here, this

22   is -- am I right to say these are the amounts that were

23   deducted from their previous paychecks for a time period

24   where they did not have insurance?

25       A.   Yes.
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1       Q.   And this was you trying to figure out how much
 2  in those deductions you owe to these employees, right?
 3       A.   Correct.
 4       Q.   Down here, there's a COBRA.  Is this a -- I
 5  guess, a former employee who was on COBRA, who was
 6  paying --
 7       A.   Yes.
 8       Q.   -- for COBRA, that didn't have coverage?
 9       A.   Correct.
10       Q.   Okay.  This says here, "Paid by wire 3-7-23."
11  Did you write that?
12       A.   Yes.
13       Q.   Did you wire money to Kyla Green?
14       A.   Kyla Green.
15       Q.   Okay.  And so you wired her 3,479.52 in March
16  of this year?
17       A.   Correct.
18       Q.   Do you know if she was engaged in a lawsuit
19  against First Choice?
20       A.   No.
21       Q.   Okay.  Did she threaten a lawsuit?
22       A.   No.
23       Q.   Why was she paid?
24       A.   She paid cash into COBRA, and I reimbursed her
25  her cash.
```

**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  Q. Okay. Now, these other people who had their

2 payroll deductions, why weren't they paid?

3  A. No money.

4  Q. So you're saying that because she paid you as

5 opposed to a payroll deduction, she got paid and the

6 other ones didn't?

7    MR. HENDERSON: Objection. Form.

8    BY MR. WOOD:

9  Q. You may respond if you can.

10  A. Oh, I'm sorry.

11  Q. I'm just trying to find out --

12  A. Her payments -- her payments for COBRA were

13 Blue Cross Blue Shield from the prior year and went

14 through Paylocity, and Paylocity was, I think, the one

15 that said, we must pay her back, because the COBRA was

16 no longer in existence, and she had continued to make

17 payments.

18  Q. Okay, so her payments were paid to -- I guess,

19 to Paylocity?

20  A. She -- Paylocity did our COBRA prior to

21 December when -- when Blue Cross was canceled, and Kyla

22 continued to make the payments through Paylocity even

23 though it was a canceled program.

24  Q. Okay. When she made those payments to

25 Paylocity after November 30th, did Paylocity pay you

**MILESTONE** | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900  www.MILESTONEREPORTING.com  Toll Free 855-MYDEPOS

```
 1   those amounts, or did they retain the amounts?

 2        A.   They paid me.

 3        Q.   Okay, so you received money from Kyla Green

 4   in, say, January of 2022?

 5        A.   Yes.

 6        Q.   Okay.

 7        A.   For a few months before she was notified.

 8        Q.   And it looks like there's four pay periods.

 9        A.   Four months.

10        Q.   This -- I mean, this says, "Number of pay

11   periods."

12        A.   I understand it was copied from up above --

13        Q.   Okay.

14        A.   -- but she was on COBRA.  It was a monthly

15   thing.

16        Q.   Okay.

17        A.   That's why she's kind of separated from

18   everybody else.

19        Q.   Okay.  Has anybody else been paid back their

20   -- the amount that was deducted from their paychecks for

21   insurance?

22        A.   No.

23        Q.   Now, there's a number of tabs here.

24   Reimbursement is the first one we've been looking at.

25   There's also Florida Blue.  Is this tab showing the
```

**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

```
 1   amount of money owed to Florida Blue?

 2        A.   Yes.  It was --

 3        Q.   There's also --

 4        A.   -- December through March invoices, I believe.

 5        Q.   Okay.  This, as of today, remains outstanding,

 6   right?

 7        A.   It's on my liability list.

 8        Q.   The Guardian, what was that?

 9        A.   Dental.

10        Q.   Okay, so these were additional deductions made

11   from paychecks?

12        A.   Yes, sir.

13        Q.   And the employees didn't get any coverage?

14        A.   Correct.

15        Q.   This is United.  This would've been April --

16   starting April of '22.

17        A.   The --

18        Q.   Is this the amount --

19        A.   -- the date of -- the date of the invoice was

20   April '22.  The period of coverage was May.  I believe

21   the United was effective May 1st.

22        Q.   Okay.  Do you know if United was ever actually

23   paid and credited, and you receive a credit for a

24   payment for their health insurance?

25        A.   I believe we tried to process payment, but it
```

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1   was returned NSF, non-sufficient funds.

 2        Q.   So sitting here today, were any months for the

 3   United plan paid for?

 4        A.   No, sir.

 5        Q.   And is it your understanding that the plan was

 6   canceled as though it had never existed?

 7        A.   Yes, sir.

 8        Q.   This next tab is for FCHS.  This is the parent

 9   company; is that right?

10        A.   Yes.

11        Q.   So this is you and Gillian as employees of the

12   parent company?

13        A.   Correct.

14        Q.   Where -- I don't -- maybe there's somewhere

15   else on here, but aren't Phil and Lance also employees

16   of the parent company?

17        A.   They were not paid through regular payroll.

18        Q.   Okay.  And what is this next one, FCID?  What

19   is this showing us?

20        A.   The FCID employees.

21        Q.   And the columns I through R -- and it looks

22   like vision, life, dental, these are, looks like, the

23   amounts deducted from paychecks; is that what it is?

24        A.   Yes, sir.

25        Q.   Okay.  And then the medical group, that
```

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

 1  would've been --

 2       A.   The medical group employees.

 3       Q.   This chart, is it showing us prior to the

 4  merge that happened in April-ish of 2022?

 5       A.   Yes.

 6       Q.   Okay, because some of these --

 7       A.   Yeah, well --

 8       Q.   -- FCID --

 9       A.   -- the employees are still separated.

10       Q.   Okay.  Okay.  And then this QuickBooks payroll

11  detail, I'm assuming this is for all of the employees,

12  and basically, they detail what their paychecks would

13  look like?

14       A.   It looks like it, yes, sir.

15       Q.   Okay.  And all of this data from these other

16  tabs were used to create the reimbursement spreadsheet,

17  right?

18       A.   Yes, sir.

19       Q.   Okay.  And so sitting here today, First Choice

20  owes $33,803.18 to its employees for healthcare

21  deductions; is that right?

22       A.   Correct.

23       Q.   This did not contemplate any claims that were

24  made by these employees while they weren't covered,

25  right?  This is just deductions?

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

 1      A.   Just deductions.

 2      Q.   Okay.  And in your conversations with the

 3  company and its officers, is there any dispute that this

 4  money is owed to these people?

 5           MR. HENDERSON:  Objection.  Form.

 6      A.   No.

 7           BY MR. WOOD:

 8      Q.   If I'm correct, the reason why it's not being

 9  paid is that you don't have the money to pay it?

10      A.   Correct.

11           MR. WOOD:  Okay, this is going to be

12      Plaintiff's 3.

13               (EXHIBIT 3 MARKED FOR IDENTIFICATION)

14           BY MR. WOOD:

15      Q.   This is an e-mail chain from June of '22.  The

16  e-mail on top is you saying, "Yes, we need to do this.

17  Thanks."  Scroll down to the bottom, and this looks as

18  though it is an option or offer to reinstate Florida

19  Blue if the company could pay $25,000 weekly until

20  they're brought current, and at which point they would

21  be made active.  And this was forwarded on to Lance, who

22  then included you on this chain, and then you responded,

23  "Yes, we need to do this.  Thanks."  Do you recall this

24  e-mail chain?

25      A.   I -- I see my name on it.  I don't recall the



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  specific date, but yes, we were trying to negotiate.

2      Q.   Okay.  And the outcome was that the company

3  did not move forward with this option to reinstate,

4  right?

5      A.   We were not able to go forward with that

6  option.

7      Q.   Did you have any conversations with Phil or

8  Lance about what to do about this option?

9      A.   I -- I don't understand the question.  The e-

10  mail is the conversation.

11      Q.   Well, you said, "Yes, we need to do it," so

12  you took the position, seemingly, that you need to make

13  the $25,000 weekly payments and get this reinstated; is

14  that fair?

15      A.   Yes, that was my opinion.

16      Q.   That didn't happen, right?

17      A.   Correct.

18      Q.   Were you involved in any communication as to

19  why it didn't happen?

20      A.   Cash flow issues.

21      Q.   Okay.  That's the reason, but were you

22  involved in communications that talked about that?

23      A.   No.

24      Q.   Okay.  Who would've been the one to consult

25  about the cash flow of the business?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1        MR. HENDERSON:  Objection.  Form.

 2    A.    Phil and Lance.

 3        BY MR. WOOD:

 4    Q.    Okay.  Do you know who made the final decision

 5  to not move forward with the option?

 6    A.    No.

 7    Q.    Okay.  After the Florida Blue was canceled in

 8  November, fast forward into April, and there was a

 9  transition to UnitedHealthcare, correct?

10    A.    Yes.

11    Q.    So there was supposed to be a transition to

12  UnitedHealthcare, right?

13    A.    Well, in April, we were still trying to

14  negotiate with Florida Blue ---

15    Q.    Okay.

16    A.    We tried to.

17    Q.    So you were trying to get that reinstated and

18  just keep on going with Florida Blue up until April?

19    A.    I believe the renewal date would've been May

20  1st.

21    Q.    Okay.  Were you personally involved in that

22  communication with Florida Blue?

23    A.    Again, they would send me collection and

24  invoices --

25    Q.    Okay.
```

**MILESTONE** | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1     A.   -- but the discussions that they had was

2  directly with Lance.

3     Q.   And I think we talked about earlier, the

4  UnitedHealthcare plan was canceled and effectively made

5  as though it didn't happen, right?

6     A.   Correct.

7     Q.   There was no payment actually made and

8  received by UnitedHealthcare?

9     A.   I believe we tried to make a payment, and it

10 was returned.

11    Q.   It was returned because there was no money in

12 the account you paid it from, right?

13    A.   Correct.

14    Q.   Okay.  Payroll deductions were being made from

15 employees' paychecks after the start of the

16 UnitedHealthcare plan, right?

17    A.   Yes.

18    Q.   And they continued for quite some time.  I

19 don't know the exact date, but they continued after you

20 were made aware of the cancellation, right?

21    A.   No, I -- I believe that we tried for several

22 months, and when we determined that United was a no-go,

23 I removed those deductions from everybody's checks.

24    Q.   Okay.  But any checks issued still had the

25 deductions, and they weren't reimbursed for those



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  deductions?

2      A.   The spreadsheet tells you what I deducted and

3  when.

4      Q.   Okay.  I'm sharing my screen again.

5           MR. WOOD:  This is Plaintiff's 4.

6           (EXHIBIT 4 MARKED FOR IDENTIFICATION)

7           BY MR. WOOD:

8      Q.   It's an e-mail.  At the -- at the top, it was

9  dated July 6th of '22.  And we'll scroll down to the

10  bottom.  The very first e-mail that prompted this is an

11  e-mail from Gillian to Phil and Lance, and you were CC'd

12  on it, and it's describing a call she received from

13  Rubelinda, stating that there was no coverage for United

14  Healthcare.

15      A.   Okay.

16      Q.   Do you recall receiving this e-mail or having

17  conversations about this?

18      A.   Yes, I believe that I did receive a copy of

19  it.

20      Q.   Okay.  There's then a response from Lance, and

21  then you have a response here.  You state, "I do not

22  feel I am able to negotiate payment, as we need to

23  review the current cash flow and discuss payments of all

24  types.  Sent to you earlier, here's the balance due,

25  UHC, after voiding the last payment," and then you have

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

```
 1  a breakdown of April, May, June, and July.  You
 2  mentioned voiding the last payment.  Which payment was
 3  voided?
 4       A.   The payment that was returned.
 5       Q.   Okay, so I think --
 6       A.   I had to physically void it to make it go back
 7  into my open payables.
 8       Q.   So you didn't take any affirmative steps to
 9  void a check?
10       A.   No.
11       Q.   It just came back non-sufficient, so -- okay.
12       A.   I believe it was paid electronically.  There
13  was not a physical check.
14       Q.   Okay.  Lance then responds about the first
15  25K. You clarify that you pay the first 25K, but they
16  took 50, so the whole amount was returned.  So here, I
17  think you're saying is that they tried to take $50,000
18  out of your account, you didn't have the funds, so they
19  returned the entire amount and voided, as you used, that
20  payment, right?
21       A.   Correct.
22       Q.   You go on to say that, "There's payments to
23  Phil and Lance today;" do you see that?
24       A.   "Then returned again, and now with the
25  payments to Phil and Lance, we do not even have the
```

**MILESTONE** | **REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

 1  original 25 to pay for April again."

 2      Q.   Okay.  So --

 3      A.   Okay.

 4      Q.   -- it sounds as though what you're saying is

 5  that, first, they took too much and we didn't have it,

 6  but now, we paid Phil and Lance, and now, we don't even

 7  have the initial 25,000 that we tried to pay.  What

 8  payments were made to Phil and Lance in -- on July 6th

 9  of 2022 that you were referring to?

10      A.   I don't recall.

11      Q.   Where would we find out where these payments

12  were, or what they were?

13      A.   You would ask, and I would have to go home and

14  look them up.

15      Q.   Okay.  So the answer to this question would

16  be, somewhere within your documents at home?

17      A.   Yeah, it's -- well, it's in my QuickBooks.

18      Q.   Okay.

19      A.   Electronic files.

20      Q.   Okay.  In this time frame, do you recall what

21  types of payments you were making to the executives?

22      A.   No, sir.

23      Q.   Do you know if they were reimbursement

24  payments of some sort, maybe?

25      A.   I -- I'm really not sure.

**MILESTONE | REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

1   Q. Okay.

2   A. Lance and Phil both had 1099 income or payroll

3 at the time.

4   Q. Okay.

5   A. I -- I -- I would have to verify.  I just

6 don't recall.

7   Q. Okay.  As we read this, though, is it your

8 understanding that because there was a payment to Phil

9 and Lance, you didn't have $25,000 to pay

10 UnitedHealthcare?

11   A. To send again, correct.

12   Q. Okay.  And then you say, "We have essentially

13 paid them nothing."  You have literally paid them

14 nothing, though, right?  No payments were ever

15 processed?  You tried, they took too much, it came back,

16 you couldn't redo it, so you've paid them nothing,

17 right?

18   A. Correct.

19   Q. Okay.  You go on to say, "I'm not even sure if

20 they know that the 50K is being returned.  The

21 cancellation date is for 4-30-2020," which I think is a

22 typo, because it's '22 --

23   A. Right.

24   Q. -- "which would make sense if they had

25 actually only taken the first 25K that was processed by

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900  www.MILESTONEREPORTING.com  Toll Free 855-MYDEPOS

1  phone and confirmed by e-mail with their AR reps."  Can

2  you try to tell me what this is saying?

3      A.   Yes.  I called United, tried to make a payment

4  by phone by doing an ACH with my routing number and

5  account number.  I said 25,000 for the first invoice,

6  and the girl said, okay.  The next day, I looked at my

7  bank account, and there was 50,000 missing all at one

8  time.  She took twice the payment as I authorized by

9  phone, so the whole thing was returned.

10     Q.   Okay.  So the first payment, you actually

11  tried to set it up over the phone, they took too much,

12  you're saying she screwed up, and -- but it appeared to

13  you at the time that because the cancellation date was

14  the end of the month, it appears that they were still

15  giving you a month of coverage; is that right?

16     A.   I -- I don't recall.

17     Q.   Okay.  The last e-mail from Lance is just

18  apologizing for the caps.  Not really pertinent here.

19          MR. WOOD:  I think this is my last document for

20     you, Plaintiff's 5.

21          (EXHIBIT 5 MARKED FOR IDENTIFICATION)

22          BY MR. WOOD:

23     Q.   This is from July of '22.  Scrolling to the

24  bottom, it's an e-mail from you, "Please see attached

25  the UHC invoice dated today, showing a $76,000 credit to

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1    cancel May, June, and July billings.  Balance remain for

2    April '22 only.  Not sure if this means they're

3    completely done with us.  Thanks."  You sent this, looks

4    like, to Lance?

5         A.   And Phil and Gillian.

6         Q.   Yeah, so Lance sent this to you, Phil, and

7    Gillian.  You may have -- it doesn't show up on here.

8    You may have just sent this to Lance.  And he asked,

9    "Phil, can you give them a call and conference me in?"

10   It wasn't really directed to you.  You then respond and

11   say, "Wouldn't it be better to wait until we have the

12   money?"  Do you recall sending this e-mail?

13        A.   I -- I don't recall sending it, but it's

14   been --

15        Q.   Do you know what you were saying?

16        A.   -- it's been frustrating, our cash flow.

17        Q.   Okay.  And so I think what you were saying

18   here, and you can correct me, is that, shouldn't we wait

19   until we have money to pay UnitedHealthcare before we

20   call them and try to figure out a payment; is that fair?

21        A.   I don't know what was going through my mind

22   when I typed that.

23        Q.   Okay.  The response to your e-mail from Lance

24   was, "I don't think it matters, and I was not saying

25   today, Monday.  Just something to plan on.  I'm getting

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  closer." Do you remember getting that from him?

2      A.   No, sir.

3      Q.   Okay. We already covered this. There was no

4  health insurance for UnitedHealthcare, so the outcome

5  was, they didn't get paid, right?

6      A.   Correct.

7      Q.   Do you know if there's ongoing communications

8  with United to try to fix this issue?

9      A.   No.

10     Q.   Okay. And you had previously mentioned about,

11 you know, you have in your books a liability for some of

12 these wages and other things. Is there a liability for

13 UnitedHealthcare on any of your books?

14     A.   Yes.

15     Q.   And what is the liability?

16     A.   The invoices that were on that open payable,

17 plus an extra $5,900 invoice that they sent me this year

18 for what they said they paid out when they thought that

19 we were still active.

20     Q.   Okay, so that last amount, that would be from

21 employees making claims with their UnitedHealthcare

22 cards, that they did pay out, that they're now saying

23 that you owe, right?

24     A.   Correct.

25     Q.   Okay. Does the company have any intention of



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1  paying the outstanding invoices to UnitedHealthcare?

2        MR. HENDERSON:  Objection.  Form.

3        BY MR. WOOD:

4    Q.   Do you know if they do?

5    A.   Yes.

6    Q.   Okay.  And that would be the only reason why

7  they're still on the sheets as a liability, right?

8    A.   Correct.

9    Q.   Have you been made aware of any progress in

10  the company's ability to make those payments current, or

11  bring those --

12   A.   No.

13   Q.   -- accounts current?

14   A.   No.

15       MR. WOOD:  Okay.  So I don't think I have

16   anything more.  However, James, it's really between,

17   I guess, us, and -- that -- there are spreadsheets

18   that she's created, that I don't have.  So if we

19   need to go over those at some point, then that might

20   pop up again, but for today, at least, I'm finished

21   with this witness.

22       MR. HENDERSON:  All right.  And I don't have

23   any questions.

24       MR. WOOD:  Okay.  So Ms. Hardesty, thank you so

25   much for participating today.  We are going to

**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

```
 1      order, as we did the other transcript.  You will
 2      have the option to read or waive the transcript, and
 3      correct if anything was taken down incorrectly.
 4           THE WITNESS:  Okay.
 5           MR. WOOD: Mr. Henderson can facilitate that if
 6      you would like. Just put on the record whether or
 7      not you want to read or waive. James, maybe you
 8      can --
 9           MR. HENDERSON:  And Julie, what he is asking
10      you is essentially, do you want to be given the
11      opportunity to read that transcript, or do you waive
12      the right to read that transcript?
13           THE WITNESS: Yes, please, I'd like to review
14      it.
15           MR. HENDERSON:  Okay --
16           MR. WOOD:  Okay.
17           MR. HENDERSON:  -- and we can -- we can set
18      that up through my office, Julie, and we'll get that
19      over to you.
20           THE WITNESS:  Okay.  Thank you.
21           MR. WOOD:  Okay.  So I have five exhibits I'll
22      be e-mailing over to you in a bit.
23           THE REPORTER:  Perfect.
24           MR. WOOD:  But I have nothing else for today,
25      so thank you so much.  We may be in touch again just
```



**MILESTONE** | **REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    to clean up on some of the things that we talked

2    about, that I don't have yet.

3          THE WITNESS:  Okay.

4          (DEPOSITION CONCLUDED AT 2:41 P.M.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



**MILESTONE | REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

```
 1                        CERTIFICATE OF OATH

 2

 3   STATE OF FLORIDA

 4   COUNTY OF ORANGE

 5

 6        I, the undersigned, certify that the witness in the

 7   foregoing transcript personally appeared before me and

 8   was duly sworn.

 9

10   Identification:  Produced Identification

11

12

13                        Kaitlyn Harris

14                        _____

15                        KAITLYN HARRIS

16                        Court Reporter, Notary Public

17                        State of Florida

18                        Commission Expires: 06/06/2027

19                        Commission No.: HH 407171

20

21

22

23

24

25
```



**MILESTONE** | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1
 2                    C E R T I F I C A T E
 3
 4   STATE OF FLORIDA)
 5   COUNTY OF ORANGE)
 6
 7        I, KAITLYN HARRIS, Court Reporter and Notary Public
 8   for the State of Florida at Large, do hereby certify
 9   that I was authorized to and did report the foregoing
10   proceeding, and that said transcript is a true record of
11   the said proceeding.
12
13        I FURTHER CERTIFY that I am not of counsel for,
14   related to, or employed by any of the parties or
15   attorneys involved herein, nor am I financially
16   interested in said action.
17
18   Submitted on: July 27, 2023.
19
20
21
22        _____
23                  KAITLYN HARRIS
24                  Court Reporter, Notary Public
25
```



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1                          ERRATA

 2

 3  PAGE      LINE                  CHANGE      REASON

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16  I have read the entire transcript of my deposition taken

17  in the captioned matter or the same has been read to

18  me.I request that the following changes be entered upon

19  the record for the reasons indicated. I have signed my

20  name to the Errata Sheet and authorize you to attach the

21  changes to the original transcript.

22

23

24  _____     _____

25  Date                       NAME
```



**MILESTONE** | **REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

**MILESTONE | REPORTING COMPANY**
TOMORROW'S TECHNOLOGY TODAY

407.423.9900
Fax 407.841.2779
Toll Free 855-MYDEPOS

**July 27, 2023**

**Julie Hardesty**
jhenderson@fresewhitehead.com

RE:  Deposition of **Julie Hardesty** taken on 7/17/2023
     **Jean Decarlo et al. v. Emerge Healthcare Group et al.**

Dear Julie Hardesty,

## IMPORTANT NOTICE FOR DEPOSITION TRANSCRIPT READ AND SIGN

It is suggested that the review of this transcript be completed within 30 days of your receipt of this letter, as considered reasonable under Federal Rules*.

___    **Attorney - Copy of Transcript Enclosed:**  Signature of the Deponent is required.  Please have the deponent make any corrections/changes necessary on the Errata Sheet ONLY, sign name on the form where indicated.  Please return ONLY the original signed Errata Sheet to our offices within 30 days from the date of this memorandum.  If you have any questions, please call our offices.

 x    **Attorney - No Copy Ordered:**  Since you did not request a copy of the transcript, it will be necessary for the Deponent to call our offices to arrange for an appointment to read and sign the transcript of the Deposition within 30 days of this memorandum.

___    **Deponent:**   At the time of your deposition, you did not waive your right to read and sign the transcript of your testimony, therefore, attached please find a copy of the transcript and Errata Sheet.  Please read the transcript, make any corrections necessary on the Errata Sheet ONLY, sign the bottom of the Errata Sheet, and return it within 30 days from the date of this memorandum.  Please call our offices if you have any questions.

___    **Deponent:**   At the time of your deposition, you did not waive your right to read and sign the transcript of your testimony, therefore, it is necessary for you to come to our offices to read and sign same.  Please call Milestone Reporting Company to arrange for an appointment at your earliest convenience.

___    The attached executed copies of the Errata Sheet(s) are sent to you for your files.  If you have any questions, please call our offices.

Thank you for your attention to this matter.

No. 276219

cc:

Waiver:
I, Julie Hardesty, hereby waive the reading and signing of my deposition transcript.

_____          _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
Deponent Signature                                                          Date

*Federal Civil Procedure Rule 30 (e) / Florida Civil Procedure Role 1.310 (e)