UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

EMELYN BONILLA

     Plaintiff,

v.                                 CASE NO.: 6:23-cv-0581

EMERGE HEALTHCARE GROUP, LLC, ET AL.,

Defendants.

_____/

**PLAINTIFF'S REPLY REGARDING HER
SUPPLEMENTAL BRIEF ON ERISA DAMAGES**

## I.   Background

On or about April 9, 2022, Plaintiff had a seizure and learned that she had a brain tumor which was removed on April 25, 2022. As a result of her brain surgery, Plaintiff incurred medical claims which were submitted to United Healthcare but were denied for lack of coverage. Plaintiff sued the Defendants alleging they breached their fiduciary duty under Employee Retirement Income Security Act ("ERISA").

On November 20, 2024, the Court entered summary judgment in favor of Plaintiff and against Defendants Friedman and Medical Group on Plaintiff's Breach of Fiduciary Duty claim and directed Plaintiff to file a supplemental brief detailing the damages sought with citations to record evidence. Dkt. 51. Plaintiff

1

filed her Brief on January 9, 2025, Dkt. 52 and on February 10, 2025, Defendants

filed a response. Dkt. 54. Plaintiff files this reply brief in support of her claim for

damages.

## PROCEDURAL BACKGROUND

1. On April 21, 2023, the Court entered its Case Management Scheduling Order

   (CMSO). Dkt. 16. That CMSO set a discovery deadline of June 19, 2023. At the

   request of the parties, an amended CMSO was entered on June 9, 2023, which

   extended the discovery deadline to September 18, 2023. Dkt. 28.

2. While discovery was ongoing, Defendant chose not to serve any discovery

   requests or conduct any depositions.

3. Plaintiff engaged in discovery, including the taking of multiple depositions,

   service of interrogatories, and requests for production. In those requests for

   production, Plaintiff sought a copy of the United plan documents, however the

   Plan was never produced nor has one been proffered by Defendants during the

   course of litigation. Dkt. 57, Request 18.

4. On February 16, 2024, the Parties submitted their joint pre-trial statement. Dkt.

   38. Defendant's "failure to mitigate damages" defense was not listed as an issue

   of fact which remained to be litigated. *See*, Dkt. 38. p. 9.

5. On March 19, 2024, the Court held a status conference wherein it directed the

   parties to file trial briefs for review by the Court in lieu of an evidentiary

hearing on the remaining issues in this case. Dkt. 45. These briefs were to include all evidence and testimony that the parties intended to introduce at trial.

6. On May 13, 2024, Plaintiff filed her trial brief which attached her medical bills. Dkt. 49; Dkt. 49-6.

7. Defendants filed their trial brief on June 10, 2024. Dkt. 50. Defendants' trial brief did not address the issue of damages whatsoever. *See*, Dkt. 51, P. 14 ("Defendant nevertheless fails to rebut the evidence offered to establish that Plaintiff has incurred damages for denied benefits.")

8. Following the entry of summary judgment in favor of Plaintiff on her breach of fiduciary duty claim, Plaintiff filed her supplemental brief on damages on January 9, 2025. Dkt. 52.

9. On February 11, 2025, Defendant filed their response to Plaintiff's damage brief. Dkt. 54. In the response, Defendants argue, for the first time, and without evidence or supporting legal authority, the following:

   a. "Plaintiff has not produced or otherwise provided any current billing statements from the providers identified in its Supplemental Brief."[1]
   b. "The amounts owed to the providers as identified in the Supplemental Brief, however, may or may not be accurate."[2]
   c. Plaintiff may have been able to mitigate her damages by negotiating a reduced amount due to her providers. [3]

---

[1] Dkt. 54, p. 4.
[2] Dkt. 54, p. 5.
[3] Id.

    d. "The medical providers may also have offered to reduce, or write-off a portion of, the amounts owed as a result of Plaintiff being effectively uninsured and 'self-pay.'"[4]

    e. "[T]he amount of "denied benefits" should be based on the amount that is actually being sought by the providers from Plaintiff as of the date of entry of final judgment."[5]

    f. …[T]o prove … "denied benefits" (minus the out-of-pocket maximum stated in the Policy), Plaintiff must establish that … the services … provided and the facilities utilized, would have been covered by the Policy … ."[6]

10. Defendants also requested that discovery be re-opened and that the Court hold a 90-minute evidentiary hearing to allow them to establish their affirmative defenses.

## II.    <u>Argument</u>

### 1.    **Discovery Should Not Be Reopened**.

In its response, Defendants requested that they be permitted to conduct limited discovery regarding their defenses in this case. This request is due to be denied. Per the Court's CMSOs, Defendants were required to serve all discovery requests in advance of the discovery deadline[7]. Additionally, the Court "*strongly disfavors* requests for extensions of time filed on the due date and will not grant further requests filed on the due date absent extraordinary circumstances. "[8]

---

[4] Id.

[5] Id.

[6] Id. at p. 6

[7] See, Dkt. 28, p. 5, ¶ D

[8] See, Dkt. 28, p. 8, ¶ E

This is consistent with the Federal Rules of Civil Procedure which only permit modification of these orders with "good cause and with the judges consent". *See*, Fed. R. Civ. P. 16(b)(4). This good cause standard is a rigorous one, requiring the Court to focus not on the good faith of or the potential prejudice to any party, but on the moving party's diligence in meeting the deadlines it seeks to modify. *See* Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 (11th Cir. 1998) (per curiam) ("This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension.").

Here, Defendants have not shown good cause. They failed to conduct ANY discovery within the original or extended discovery deadline of September 18, 2023. Now, nearly a year and a half after the deadline, Defendants request to conduct the discovery which they strategically chose not to complete. Inexcusable neglect is not good cause, and the request should be denied.

2. **Date of Plaintiff's Billing Records**

Defendants next complain that the medical bills should be updated to reflect the amounts sought from Plaintiff as of the date of entry of final judgment. Defendants provide no legal authority for this position and do not explain why they argue that the only billing records which should be reviewed are those which are generated well after the close of discovery.

Plaintiff provided Defendants with the billing records in her possession. At no point in time did Defendants request updated billing records, nor did they make any objections to the documents in response to Plaintiff's motion for summary judgment. Plaintiff's exhibit list attached to the joint pre-trial statement also contains no objection to the exhibit at issue here. *See*, Dkt. 38-2. Similarly, in its trial brief Defendants make no argument as to the billing records or make any objections thereto. As such, Defendants objections to the documents have been waived and their position should not be considered.

### 3. Defendants Have Waived Their Failure to Mitigate Defense.

In their joint pre-trial statement, the parties were required to identify the issues of fact which needed to be litigated at trial. Pursuant to Local Rule 3.06(b), "the parties must file a final pretrial statement that will govern the trial." Neither "failure to mitigate", nor "Plaintiff's efforts to mitigate her damages" were listed as issues to be litigated at trial. As such, the defense has been waived. [9]

---

[9] *See*, Randolph County v. Alabama Power Co., 784 F.2d 1067, 1072 (11th Cir. 1986) ("Rule 16(e) of the Federal Rules of Civil Procedure provides that a pretrial order controls the subsequent action of the litigation. The parties are bound by their agreement to so limit issues and may not introduce at trial issues excluded in the pretrial order. *(citations omitted)"); See also*, Superior Consulting Services, Inc. v. Shaklee Corp., Case No. 6:16-cv-2001-Orl-31GJK, Dkt. 339 (M.D. Fla. June 28, 2018) (holding issues or claims not raises in pretrial statement are waived.); *See also*, Havey v. City of Bradenton, No. 8:04-cv-1748, 2006 WL 1152060, at *1 (M.D. Fla. May 1, 2006) (finding relief was not appropriate because the plaintiff did not mention such relief "in the pretrial stipulation submitted by the parties, a document which merges the pleadings and governs the trial").

The Court also ordered the parties to submit trial briefs in lieu of an evidentiary hearing. Defendants submitted their trial brief on June 10, 2024; however, they did not address the issue of damages, nor did they make any argument as to their affirmative defenses, including mitigation of damages. These circumstances resulted in a waiver of the issue for trial or subsequent hearings.

Additionally, although Defendants argue that Plaintiff had a duty to negotiate her medical bills, they ignore the fact that the bills which were submitted already provide for reductions including insurer payments[10], adjustments[11], and negotiated discounts[12].

### 4. Defendants Cannot Contest Coverage

Defendants appear to contest whether certain denied benefits would have been covered by the United Plan, had it been in effect. However, Defendants proffered no evidence to support this claim. Indeed, Defendants failed to produce the Plan through discovery, omitted the Plan as an exhibit on its exhibit list, did not address the issue in its response to summary judgment[13], did not list coverage as an issue

---

[10] See, e.g. Dkt. 49-6, p. 10.

[11] See, E.g. Dkt. 49-6, p. 23.

[12] See, e.g. Dkt. 49-6, p. 19.

[13] The Eleventh Circuit Court of Appeals instructs that "[w]hen a party moves for final, not partial, summary judgment, . . . `it [becomes] incumbent upon the [nonmovant] to respond by, at the very least, raising in their opposition papers any and all arguments or defenses they felt precluded judgment in [the moving party's] favor.'" Case v. Eslinger, 555 F.3d 1317, 1329 (11th Cir. 2009) (third, fourth and fifth alteration in original) (*quoting* Johnson v. Bd. of Regents of the Univ. of Ga., 263 F.3d 1234, 1264 (11th Cir. 2001)). "Failure

which remained to be litigated in the joint pretrial statement, nor did they mention the issue in their trial brief. As a result, Defendants have waived the argument.

Regardless, the issue raised by Defendants as to the possibility that claims may not be covered if Plaintiff utilized out-of-network providers or facilities[14] was resolved by Congress in 2020 when it enacted the No Surprise Act ("NSA"). The NSA simultaneously modified portions of the Public Health Service Act, the Internal Revenue Code, and the Employee Retirement Income Security Act. 42 U.S.C. §§ 300gg et seq. "Its main purpose was to end surprise medical billing by ensuring that certain out-of-network providers are treated the same as in-network providers." *See* § 300gg-111(a)(1); *See also*, <u>Med-Trans Corp. v. Cap. Health Plan, Inc</u>., 700 F. Supp. 3d 1076, 1079-80 1083-84 (M.D. Fla. 2023)(discussing the "No Surprise Act" which was enacted in 2020.)

Because the NSA required coverage, regardless of the status of the providers or facilities, Plaintiff's claims which were incurred in April 2022, would have been covered and Defendants' argument fails to consider the current state of the law.

---

to do so may result in waiver or abandonment of the issue." Id. Significantly, "[i]n opposing a motion for summary judgment, `a party may not rely on his pleadings to avoid judgment against him.'" <u>Resolution Trust Corp. v. Dunmar Corp</u>., 43 F.3d 587, 599 (11th Cir. 1995) (*quoting* <u>Ryan v. Int'l Union of Operating Eng'rs, Local 675</u>, 794 F.2d 641, 643 (11th Cir. 1986)).

[14] Defendant provide no legal or factual support for this hypothetical circumstance.

**5. No evidentiary hearing is necessary**

Defendants' request for an evidentiary hearing is unnecessary, as the only issues they seek to address are defenses which were not identified as issues for trial and have been waived. In their pre-trial statement, Defendants represented that they "do not deny that [the denied benefits total] represents the total amounts reflected on the bills and receipts produced by the Plaintiff… ."Dkt. 38, p. 4.

Therefore, there is no need to conduct an evidentiary hearing on issues which were not listed as issues for trial, which were previously stipulated by Defendants, or which have been waived.

**6. Correction of Plaintiff's Total Claimed Amoun**t

In its response, Defendants correctly point out that Plaintiff included in her trial brief a claim of damages in excess of $120,000.00, whereas the supplemental brief identified $119,763.93 in damages. [15] The higher amount was a result of a miscalculation which was subsequently corrected to the benefit of Defendants.

Previously, Plaintiff calculated denied benefits totaling $121,828.21 as follows[16]:

---

[15] In the joint pre-trial statement, the parties acknowledged that the total amount sought was $121,828.21. Dkt. 38, p. 4, §V

[16] This calculation did not take into consideration the out-of-pocket maximum.

| Provider | Amount |
|---|---|
| Brevard Physicians Assoc PLLC- Ed South | $    1,040.00 |
| Orlando Neurosurgery | $  11,854.50 |
| Health First Medical Group | $       206.00 |
| Advent Health | $103,171.70 |
| US Anesthesia Partners | $    2,122.69 |
| Advent Health | $       706.32 |
| Orlando Neurosurgery | $    2,464.00 |
| Health First Medical Group | $       263.00 |
| | $121,828.21 |

In preparing to submit the supplemental brief, Plaintiff found that some of the entries needed to be increased, decreased, or omitted as duplicative, as described below:

1. Orlando Neurosurgery needed to be increased from $11,854.50 to $11,929.50 to exclude Plaintiff's $75.00 payment.
2. US Anesthesia Partners increased from $2,122.69 to $2,197.69 to exclude Plaintiff's $75.00 in payments.
3. The lesser Advent Health claim was reduced from $706.32 to $440.52 to reflect the "negotiated discount" of $265.80.
4. The Orlando Neurosurgery entry of $2,464.00 was removed because it was already included in the $11,929.50 total. [17]
5. The Health First bill of $263.00 was increased to accurately represent the entire amount due in the December 13, 2022, statement. After deductions for insurance and excluding Plaintiff's $75.00 payment, it amounted to $751.52.

These corrections were made to the benefit of Defendants and were the result of an oversight, as opposed to any intentional misstatement, by Plaintiff.

---

[17] *See*, Dkt. 49-6, p. 3.

**WHEREFORE**, Plaintiff respectfully requests the entry of an order granting judgment in favor of Plaintiff and against Defendants Friedman and Medical Group in the amount of $111,586.93, direct the Clerk to enter judgment in that amount, and find that Plaintiff is the prevailing party and is entitled to her attorney's fees and costs, the amount of which to be established at a later date.

Dated this 12th day of February 2025.

ARCADIER, BIGGIE & WOOD, PLLC
*/s/Joseph C. Wood, Esquire*
Joseph C. Wood, Esquire

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original of the foregoing was filed with the Clerk of Court by using the CM/ECF system, on this 12th day of February 2025. Counsel of Record for all parties will receive notice of the electronic filing.

ARCADIER, BIGGIE & WOOD, PLLC
*/s/Joseph C. Wood, Esquire*
Joseph C. Wood, Esquire
Florida Bar No. 0093839
2815 W. New Haven, Suite 304
Melbourne, Florida 32904
Primary Email: Office@ABWlegal.com
Secondary Email: Wood@ABWlegal.com
Phone: (321) 953-5998
Fax: (321) 953-6075